[Cite as *Rude v. NUCO Edn. Corp.*, 2011-Ohio-6789.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

BARBARA J. RUDE, et al.

     Appellees

     v.

NUCO EDUCATION CORPORATION,
dba NATIONAL INSTITUTE OF
TECHNOLOGY, et al.

     Appellants

C.A. No.     25549

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    2010-01-032

DECISION AND JOURNAL ENTRY

Dated: December 30, 2011

DICKINSON, Judge.

## INTRODUCTION

{¶1}   When a number of nursing students of the RETS School of Nursing at the National Institute of Technology in Cuyahoga Falls learned that the program they had entered was not accredited, they sued the school. Their claims included violation of the Ohio Consumer Sales Practices Act, breach of contract, fraud, unjust enrichment, promissory estoppel, and negligence. The claims were based on allegations that the school had actively misrepresented its accreditation in order to induce them to secure thousands of dollars in federal education loans to enter the program. The school moved to stay the proceedings pending arbitration, and the students opposed the motion, arguing that the arbitration provision in the enrollment agreement was unconscionable. Following an evidentiary hearing, the trial court determined the arbitration agreement is unenforceable and denied the school's motion to stay. The school has appealed that

decision. This Court affirms because the arbitration provision is unenforceable as it is both procedurally and substantively unconscionable.

BACKGROUND

{¶2} Barbara Rude and Jessica Canfield filed suit against NUCO Education Corporation dba National Institute of Technology, Aimee Dennison, Education Affiliates Inc., RETS Tech Center Inc. dba RETS College, and ten John Does. The named defendants included the two schools that promoted the nursing program, an admissions representative, and her direct employer. Two months later, Sonja Flynn sued the same defendants, alleging similar claims. Soon after that, Ms. Rude and Ms. Canfield amended their complaint and added Michelle Stover, Lacey Stoops, and Melissa Welker as party plaintiffs. They also moved to consolidate their case with that of Sonja Flynn. The trial court granted that motion.

{¶3} Meanwhile, the school defendants moved to dismiss or stay the proceedings pending arbitration. The students opposed the motion, arguing the arbitration clause could not be enforced against them because it was both procedurally and substantively unconscionable. The trial court held an evidentiary hearing and ruled in favor of the students, precipitating this appeal.

{¶4} According to the students, their future educational and professional options are severely limited by participation in an unaccredited nursing program. They testified that, knowing that to be the case, prior to enrolling in the program, they asked the admissions representative whether the program was accredited. Each student testified that she was told that it was accredited when, in fact, it was not.

{¶5} The students testified that they each had a single meeting with Ms. Dennison that ended with them signing a "Retail Installment Contract" and an "Enrollment Agreement." The students promised to pay approximately $25,000 each for the course of instruction culminating in

an occupational associate degree in registered nursing. The enrollment agreement is printed on a legal size piece of paper with single-spaced small print following the hand-written area describing the individual applicant. The arbitration provision appears on the back of the pre-printed form in the same size font as the rest of the page:

> "Any disputes or claims arising out of or relating to this Agreement (including any claims against the Institute, any affiliate of the Institute or any Institute affiliate's officers, directors, trustees, employees, or agents) shall be resolved by individual binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect, and judgment on any award by the arbitrator(s) may be entered in any court having jurisdiction. The parties agree that this transaction involves interstate commerce and therefore the Federal Arbitration Act and related federal judicial procedure shall govern this Agreement to the fullest extent possible. The parties agree that any dispute subject to arbitration shall not be adjudicated as a class action or a consolidated class arbitration proceeding either in court or under the rules of the American Arbitration Association. The parties agree that a student's responsibility to pay administrative fees, filing fees, processing fees, arbitrator compensation, and services charges for arbitration proceedings conducted by the American Arbitration Association under this Agreement shall be limited to no more than $125.00 for claims under $10,000 and $375.00 for claims between $10,000 but less than $75,000, or for claims not seeking monetary compensation. The arbitrator is allowed to ignore this limit, except as prohibited under applicable arbitration rules, should the arbitrator find that the student filed a frivolous claim(s) or unnecessarily delayed the arbitration proceedings. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content or results of any arbitration conducted pursuant to this provision without the prior written consent of both parties."

{¶6} Each of the students is a licensed practical nurse who comes from modest financial means and hoped to increase her earning power by becoming a registered nurse following graduation from the National Institute of Technology, now known as Fortis College. The National Institute of Technology is a for-profit private career college. The students said that, during individual meetings with the nursing recruiter, Aimee Dennison, they were pressured to sign the agreement immediately or risk losing their spot in the next class. The students testified that, although there are other nursing programs in the area, they take longer to complete

and have waiting lists. The students testified that they did not read the enrollment agreement word for word during their meeting with Ms. Dennison, but merely "skimmed" it before signing. None of them knew what arbitration was or asked any questions about the arbitration provision. Ms. Dennison testified that, although she interviews hundreds of applicants each year, she has never been asked a question about the arbitration provision and she has not mentioned it when meeting with prospective students. In fact, Ms. Dennison testified that she did not understand the arbitration provision herself. In any event, she said that she had no power to alter any of the terms of the agreement.

## ARBITRATION

{¶7} The school defendants' sole assignment of error is that the trial court incorrectly denied their motion to dismiss or compel arbitration because it incorrectly determined that the arbitration clause is unconscionable and, therefore, unenforceable. The students have accused the school of fraudulently inducing them to take on thousands of dollars of debt to pursue an unaccredited degree. In order to defeat a motion to stay pending arbitration, however, "a party must demonstrate that the arbitration provision itself in the contract at issue, and not merely the contract in general, was fraudulently induced." *ABM Farms Inc. v. Woods*, 81 Ohio St. 3d 498, syllabus (1998). "Arbitration agreements are 'valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.'" *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St. 3d 352, 2008-Ohio-938, at ¶33 (quoting R.C. 2711.01(A)). Unconscionability is a valid basis for revoking a contract. *Id.*

{¶8} "Unconscionability includes both 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St. 3d 352, 2008-Ohio-938, at ¶34

(quoting *Lake Ridge Academy v. Carney*, 66 Ohio St. 3d 376, 383 (1993)). "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Id.* (citing *Collins v. Click Camera & Video Inc.*, 86 Ohio App. 3d 826, 834 (1993) ("One must allege and prove a 'quantum' of both prongs in order to establish that a particular contract is unconscionable")).

{¶9} "The issue of unconscionability is a question of law." *Eagle v. Fred Martin Motor Co.*, 157 Ohio App. 3d 150, 2004-Ohio-829, at ¶12. Therefore, this Court reviews a trial court's unconscionability decision de novo. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St. 3d 352, 2008-Ohio-938, at ¶2. The question, however, necessarily requires a case-by-case review of the facts and circumstances surrounding the making of the agreement. *Eagle*, 2004-Ohio-829, at ¶13. To the extent that conflicts in the evidence must be resolved via an evaluation of the credibility of witnesses, the trial court is in a better position to perform that evaluation and this Court is deferential toward such factual findings. *Taylor*, 2008-Ohio-938, at ¶38.

PROCEDURAL UNCONSCIONABILITY

{¶10} The trial court held that the arbitration provision was procedurally unconscionable because there is a disparity of bargaining power between the students and the school, the school used high-pressure sales tactics, the provision was part of a take-it-or-leave-it adhesion contract, and the students had no understanding of arbitration or the effect of entering into an arbitration agreement. "Procedural unconscionability concerns the formation of the agreement and occurs when no voluntary meeting of the minds is possible." *Brunke v. Ohio State Home Servs*. Inc., 9th Dist. No. 08CA009320, 2008-Ohio-5394, at ¶10 (quoting *Porpora v. Gatliff Bldg. Co.*, 160 Ohio App. 3d 843, 2005-Ohio-2410, at ¶7). To evaluate procedural unconscionability, this Court considers "the relative bargaining positions of the parties . . . and whether the party claiming that

the provision is unconscionable was represented by counsel at the time the contract was executed." *Porpora*, 2005-Ohio-2410, at ¶7 (citing *Eagle v. Fred Martin Motor Co.*, 157 Ohio App. 3d 150, 2004-Ohio-829, at ¶31). Factors bearing on the relative bargaining positions of the parties include "age, education, intelligence, business acumen, experience in similar transactions, whether the terms were explained to the weaker party, and who drafted the contract." *Eagle*, 2004-Ohio-829, at ¶31. Generally, no one factor alone determines whether a contract is procedurally unconscionable. *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 2009-Ohio-2054, at ¶29. A court must consider the totality of the circumstances. *Id.* at ¶30.

{¶11} An adhesion contract is "a standardized form contract prepared by one party, and offered to the weaker party, usually a consumer, who has no realistic choice as to the contract terms." *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St. 3d 352, 2008-Ohio-938, at ¶49 (citing Black's Law Dictionary 342 (8th Ed. 2004)). Despite Ohio's public policy in favor of arbitration, the Ohio Supreme Court has cautioned courts to pay special attention to arbitration clauses in contracts between businesses and consumers. *Id.* at ¶50. "To be sure, an arbitration clause in a consumer contract with some characteristics of an adhesion contract, 'necessarily engenders more reservations than an arbitration clause in a different setting,' such as a collective-bargaining agreement or a commercial contract between two businesses." *Id.* (quoting *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 472 (1998)). In the consumer context, the Ohio Supreme Court has warned that if "there are strong indications that the contract at issue is an adhesion contract, and the arbitration clause itself appears to be adhesive in nature," there is "considerable doubt that any true agreement ever existed to submit disputes to arbitration." *Williams*, 83 Ohio St. 3d at 473. Under those circumstances, "the presumption in favor of arbitration should be substantially weaker[.]" *Id.*

{¶12} In this case, there is no doubt that the contract evidences a consumer transaction for the provision of educational services. See R.C. 3332.16. The entire contract, including the arbitration provision was drafted by the school, preprinted in boilerplate language, and presented on a take-it-or-leave-it basis. Ms. Dennison testified that the school had more applicants than it could accommodate and she had no authority to negotiate the terms of the contract even if any of the applicants had been sophisticated enough to question them. Thus, it was a contract of adhesion as the trial court determined. Furthermore, the arbitration provision was not a separate document, but was part of the single-spaced fine print of a double-sided legal size piece of paper. See *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 2009-Ohio-2054, at ¶28. As this arbitration provision appears in a consumer contract that is one of adhesion, we consider it in light of the Ohio Supreme Court's warning that there is "considerable doubt that any true agreement ever existed to submit disputes to arbitration." *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 473 (1998).

{¶13} The trial court correctly determined that the school enjoyed a "vastly superior bargaining position over the [students]." Although the students were all literate adults working as licensed practical nurses, none of them had any education beyond high school and a brief practical nursing program. None of them claimed any business education or experience and none of them knew what the word "arbitration" meant. Ms. Dennison testified that she did not, and, in fact, could not explain the arbitration provision to students. She testified that she did not understand it herself. The students had some experience with other consumer contracts, such as those for purchase of a house or car, but there was no evidence that any of the students had any experience with or understanding of arbitration provisions.

{¶14} The trial court determined that Ms. Dennison fulfilled a dual role as both "advisor [to the students] as they made a major life decision" and "closing agent for the school." This contributed to the unequal bargaining power in the relationship. Each of the students testified that she was experiencing financial difficulty and hoped to increase her earning power to support her family by obtaining licensure as a registered nurse. They all needed to secure loans in order to pay the $25,000 in tuition and fees required by the school. Ms. Dennison testified that she or a co-worker met with each interested applicant and got to know them to help them determine whether the nursing program would be a good fit. Following the interview, she had the power to determine whether each applicant would be permitted to take the next step in the admissions process. The trial court found that "[e]ach [student] testified, entirely consistently, that [Ms.] Dennison urged her to sign the enrollment agreement during the meeting or risk losing [her] spot in the program. This representation acted as an impetus for each [student] to sign the enrollment form." None of the students was represented by a lawyer when they signed the contract. In fact, none of them knew any lawyers or had ever hired a lawyer except for help with a divorce.

{¶15} No prospective student has ever asked Ms. Dennison about the arbitration provision or asked to consult with a lawyer before signing it. Ms. Dennison testified that she always encouraged the students to read the agreement while she stepped out of the room to make copies of the forms. Although she did not require the students to sign at the first meeting, she did pressure them to sign immediately by emphasizing that the classes fill up fast and they may well have to wait if they do not choose to sign immediately.

{¶16} The school has argued that the students were not without bargaining power because they could have obtained the same services elsewhere. The evidence revealed that there were a few other nursing programs in the area, but that those programs have waiting lists and,

once begun, take longer to complete. There was no evidence of a multitude of registered nursing programs available in the area. We note that the school has requested that this Court take judicial notice that "there are no fewer than eleven registered nursing programs in Northeast Ohio alone." Under Rule 201 of the Ohio Rules of Evidence, a court may take judicial notice of an adjudicative fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid. R. 201(B). A court "shall take judicial notice if requested by a party and supplied with the necessary information." Evid. R. 201(D). We cannot take judicial notice of the number of registered nursing programs in Northeast Ohio because the source of information offered, that is, a link to a website for the Ohio Board of Nursing, did not supply the information in a manner that allows for judicial notice of a discrete fact without further inquiry. There is no evidence in the record indicating that a multitude of schools, located a similar distance from the students' homes, offered the same program.

{¶17} The school has argued that the arbitration provision is not procedurally unconscionable because the contract contained a five-day cancellation provision. The trial court determined that the "five-day cancellation period may mitigate against procedural unconscionability, [but] the arbitration clause in thi[s] case . . . is so hard to understand that the [students] had no reasonable opportunity to protect their interest and cancel their enrollment." The trial court focused on the language about agreeing that the transaction involved "interstate commerce" when it did not. In addition to using language confusing even to a reviewing court, the provision does nothing to explain its meaning to the average consumer. *Olah v. Ganley Chevrolet Inc.*, 8th Dist. No. 86132, 2006-Ohio-694, at ¶26 (arbitration clause that failed to

explain "any details about the arbitration process" deemed substantively unconscionable because "its incompleteness is not only confusing, but misleading[.]"). "Accepting the arbitration clause as written, plaintiffs could not have known what being bound to arbitration really meant." *Id.* The clause in this case is even less informative than the clause in *Olah*. In that case, the Court considered an arbitration clause that explained "binding arbitration" with the words, "you give up your right to go to court." *Id.* at ¶19. In this case, the clause did nothing to explain the words "binding arbitration" and "judgment on any award by the arbitrator(s) may be entered in any court having jurisdiction." Furthermore, whether the students read the clause thoroughly before signing or within the five-day cancellation period is "ultimately inconsequential in this particular case . . . [because, as discussed below,] nothing on the face of the [arbitration] clause could have put [them] on notice of excessive, prohibitive costs associated with the arbitration." *Eagle v. Fred Martin Motor Co.*, 157 Ohio App. 3d 150, 2004-Ohio-829, at ¶54. The arbitration provision is procedurally unconscionable as applied to these students. To the extent that the school's assignment of error relates to procedural unconscionability, it is overruled.

## SUBSTANTIVE UNCONSCIONABILITY

{¶18} The trial court held the arbitration provision is substantively unconscionable because it prevents the students from proceeding under the Consumer Sales Practices Act, requires them to arbitrate under commercial rather than consumer arbitration rules, denies them access to the remedial provisions of the Consumer Sales Practices Act, mandates that they prosecute all claims individually, and requires confidentiality. The trial court further found the arbitration provision commercially unreasonable because it is "very difficult to understand" and determined that "it is pretty clear the [students] could not understand it." "Substantive unconscionability encompasses those factors that concern the contract terms themselves[.]"

*Brunke v. Ohio State Home Servs*. Inc., 9th Dist. No. 08CA009320, 2008-Ohio-5394, at ¶10 (quoting *Eagle v. Fred Martin Motor Co.*, 157 Ohio App. 3d 150, 2004-Ohio-829, at ¶31). "Contractual terms are substantively unconscionable if they are unfair and commercially unreasonable." *Id.* (citing *Ball v. Ohio State Home Servs. Inc.*, 168 Ohio App. 3d 622, 2006-Ohio-4464, at ¶7).

{¶19} The school has argued that the provision is not substantively unconscionable because this Court has repeatedly enforced arbitration agreements in cases involving claims made under the Consumer Sales Practices Act, Ohio courts have held that class action waivers do not make arbitration provisions substantively unconscionable, and the confidentiality provision does not interfere with enforcement of the statutory claims because the provision forbids disclosure "[e]xcept as may be required by law." The students have argued that the class action prohibition, coupled with the confidentiality clause, renders the arbitration provision substantively unconscionable.

{¶20} In this case, however, the confidentiality restriction is limited so as to avoid interfering with applicable law. The contract provides that "neither a party nor an arbitrator may disclose the existence, content or results of any arbitration conducted pursuant to this provision without the prior written consent of both parties," but that restriction is limited by the words "[e]xcept as may be required by law." Thus, the remedial goals of the Ohio Consumer Sales Practices Act are not stymied by the confidentiality language in the arbitration provision. On the contrary, to the extent that the Act requires dissemination of the arbitration award or other information about the arbitration in order to protect other consumers, the language of the contract indicates that the law will be followed over the contract's preference for confidentiality. See R.C. 1345.05(A)(3).

**{¶21}** This Court is "not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." *State ex rel. Carter v. Schotten*, 70 Ohio St. 3d 89, 92 (1994). In this case, we do not agree with each of the reasons the trial court assigned for holding this arbitration provision substantively unconscionable, nor do we agree with its decision to give the cost issue "little weight." Regardless, "an appellate court shall affirm a trial court's judgment that is legally correct on other grounds, that is, one that achieves the right result for the wrong reason, because such an error is not prejudicial." *Cook Family Invests. v. Billings*, 9th Dist. Nos. 05CA008689, 05CA008691, 2006-Ohio-764, at ¶19. In this case, we affirm the judgment of the trial court because it correctly held the arbitration provision is both procedurally and substantively unconscionable, regardless of the reasons it assigned.

**{¶22}** An analysis of this arbitration provision reveals that it is substantively unconscionable because it prevents the students from vindicating their claims due to the excessive cost of arbitration. Although the trial court found the students "have limited means to pay an arbitrator," it gave "little weight" to the cost issue because "nothing in the provision exposes [the students] to undue or prohibitive costs." The trial court determined that the students would be required to pay a filing fee similar to a court of competent jurisdiction and that they would "be exposed to additional, unspecified costs in either arbitration or civil litigation."

**{¶23}** The arbitration provision provides that students asserting a claim for damages between $10,000 and $75,000 will have their total arbitration fees capped at $375. The arbitrator is allowed to ignore the limit, however, if he finds that the student "filed a frivolous claim[ ] or unnecessarily delayed the arbitration proceedings." The students argued before the trial court that the unspecified costs, such as witness fees, and the arbitrator's discretionary power to ignore the fee cap could expose them to untold costs that place arbitration out of reach. Ms. Rude

testified that she would not pursue arbitration if it exposed her to more than $1200 in costs. As a single mother without a consistent source of income, Ms. Canfield testified that $375 is too much for her to pursue arbitration of her claims against the school.

{¶24} Although silence of an arbitration clause with respect to costs does not, by itself, make the clause unconscionable, "if the costs associated with the arbitration effectively deny a claimant the right to a hearing or an adequate remedy in an efficient and cost-effective manner," then the clause is invalid. *Felix v. Ganley Chevrolet Inc.*, 8th Dist. No. 86990, 86991, 2006-Ohio-4500, at ¶21. As the students have argued to this Court, the fee cap is inapplicable in this case, making arbitration under the provision prohibitively expensive. The students' claims exceed $75,000 because they seek to recover monetary damages in excess of $25,000, subject to trebling under the Ohio Consumer Sales Practices Act. The trial court record contains a copy of the American Arbitration Association's Commercial Rules authenticated by a lawyer's affidavit. According to the standard fee schedule found in those rules, the students would be responsible for paying an initial filing fee of $1850 and a case service fee of $750 for a claim that proceeds to an initial hearing. These initial costs are merely the administrative costs of arbitration. Under Rule 50, each party is also responsible for her own witnesses' expenses and half of the cost of "[a]ll other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the costs of any proof produced at the direct request of the arbitrator[.]" The arbitrator's hourly rate of compensation is not specified, but is described in Rule 51(a) as "a rate consistent with the arbitrator's stated rate of compensation." Additionally, the arbitrator has the power to assess all or any part of the total arbitration costs to either party.

**{¶25}** The cost problem is further exacerbated in this case by the class action waiver language in the provision. The provision forbids any "class action or a consolidated class arbitration proceeding either in court or under the rules of the American Arbitration Association." When a number of consumers have similar claims against a company, they may file one complaint in court and share the filing fee and additional costs associated with pursuing that claim, as the students testified that they have done in this action. When consumers are prevented from sharing the cost of that endeavor, it can quickly become more expensive than any one is able to shoulder alone. In this case, the students testified that they are unable to afford even the initial filing fee to arbitrate this case individually. See *Porpora v. Gatfliff Bldg. Co.*, 160 Ohio App. 3d 843, 2005-Ohio-2410, at ¶17-19.

**{¶26}** Ignoring the fact that the arbitration clause exposes the students to potential liability for the entire cost of arbitration, the evidence shows that the known cost of arbitration under this clause is unattainable for these students, making them unable to vindicate their statutory rights. See *Green Tree Fin. Corp.-AL v. Randolph*, 531 U.S. 79, 90-91 (2000) (arbitration clause not invalidated by record's silence on the subject of arbitration costs because silence allowed only speculation regarding whether costs would be prohibitive). From the evidence presented to the trial court, we know that each student will be required to pay a minimum of $1850 to file an arbitration claim and another $750 once the claim proceeds to an initial hearing. It is not at all speculative to consider that the students will each have to pay half of the arbitrator's fee, even if no expenses are billed. There is no evidence in the record regarding how much each arbitrator will charge for his services, but a fee will certainly be charged. So, we know that the arbitration costs will exceed the filing fee. The students have offered a link to the website for the Summit County Clerk of Courts, indicating that the cost to

file a civil complaint is $275.00 plus a $25 fee for each summons the clerk is instructed to issue, http://www.cpclerk.co.summit.oh.us\civilfees.asp (last visited Dec. 28, 2011). In this case, six plaintiffs filed two complaints and served four defendants. The cost of that filing was shared among six plaintiffs rather than being incurred individually, as would be required in arbitration under the terms of this provision.

{¶27} As the students have testified that they cannot afford to pay even the initial filing fee for individual arbitration under this clause, the students have met their burden of showing that the arbitration fees they would be responsible for under the contract make vindication of their claims through arbitration cost prohibitive. See *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St. 3d 352, 2008-Ohio-938, at ¶59. The arbitration provision in this case is substantively unconscionable because it is prohibitively expensive for consumers to pursue their claims under the terms of the provision.

## SEVERABILITY

{¶28} The school has argued for the first time on appeal that, if this Court deems some part of the arbitration provision unconscionable, it should not affect the enforceability of the remainder of that provision because the contract also includes a severability clause. The contract provides that "[i]f any court of competent jurisdiction or governmental or accrediting agency determines that any provision of this Agreement is invalid or unenforceable, such judgment shall not invalidate any other provision of this Agreement."

{¶29} The school has cited the Ohio state court cases of *Ignazio v. Clear Channel Broadcasting Inc.*, 113 Ohio St. 3d 276, 2007-Ohio-1947, at ¶12, *Bozich v. Kozusko*, 9th Dist. No. 09CA009604, 2009-Ohio-6908, at ¶10, and *Broughsville v. OHECC LLC*, 9th Dist. No. 05CA008672, 2005-Ohio-6733, at ¶27-33, in support of its argument. The students have

correctly argued that those cases are not similar to the situation in this case. *Ignazio*, 2007-Ohio-1947, at ¶17 (sentence in arbitration clause providing expanded judicial review contrary to state law was unenforceable and severable); *Broughsville*, 2005-Ohio-6733, at ¶22 (the designated arbital forum was unavailable, but term could be severed from the arbitration agreement); *Bozich*, 2009-Ohio-6908, at ¶10 (limitation of liability to price of home inspection was unconscionable and severable). In each of those cases, the court severed a discrete term of the arbitration provision and enforced the remainder of it. In this case, we need not consider how the cost of arbitration could be severed from this agreement because the school has forfeited its right to raise this issue by failing to raise it before the trial court. *Eisenbrei v. Akron*, 9th Dist. No. 25788, 2011-Ohio-5777, at ¶12 (citing *Thrower v. Akron Dep't of Public Hous. Appeals Bd.*, 9th Dist. No. 20778, 2002-Ohio-3409, at ¶20). To the extent that the school's assignment of error addresses substantive unconscionability, it is overruled.

## CONCLUSION

**{¶30}** The school's assignment of error is overruled. The trial court correctly held that the arbitration provision in this consumer contract is both procedurally and substantively unconscionable and, therefore, unenforceable. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

CLAIR E. DICKINSON
FOR THE COURT

BELFANCE, P. J.
MOORE, J.
CONCUR

APPEARANCES:

DOUGLAS B. SCHNEE and LUCY K. O'SHAUGHNESSY, Attorneys at Law, for Appellants.

WILLIAM DOWLING and JOSHUA D. NOLAN, Attorneys at Law, for Appellees.