[Cite as *State v. Spaulding*, 2018-Ohio-3663.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.  28526 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAWUD SPAULDING | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.  CR2012-05-1508 |

## DECISION AND JOURNAL ENTRY

Dated: September 12, 2018

TEODOSIO, Judge.

{¶1} Appellant, Dawud Spaulding, appeals from the denial of his petition for post-conviction relief and motion for testing and related discovery in the Summit County Court of Common Pleas. This Court affirms.

## I.

{¶2} In the early morning of December 15, 2011, Mr. Spaulding shot and paralyzed Patrick Griffin while he was leaving a house on Grant Street. Merely hours later, Mr. Spaulding shot and killed both Erica Singleton and Ernie Thomas outside of the same house. Mr. Spaulding was arrested the following day. After a jury trial, Mr. Spaulding was convicted of two counts of aggravated murder with course of conduct death specifications, attempted murder, and a multitude of other charges. After a mitigation hearing, the jury recommended a sentence of death, which was accepted by the trial court. The court sentenced Mr. Spaulding to death along with 32 and one-half years in prison. The Supreme Court of Ohio affirmed Mr. Spaulding's

convictions and sentence. *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, ¶ 230. Mr. Spaulding filed a petition for post-conviction relief in the trial court citing ten grounds for relief, an amended petition containing an additional 25 grounds for relief, and a separate motion for testing and related discovery, which were denied by the trial court.

{¶3} Mr. Spaulding now appeals from the trial court's denial of his petition for post-conviction relief and motion for testing and related discovery and raises four assignments of error for this Court's review.

{¶4} For ease of analysis, we reorganize Mr. Spaulding's assignments of error.

II.

**Post-Conviction Relief**

{¶5} "A post[-]conviction proceeding is a collateral civil attack on a criminal conviction." *State v. Phillips*, 9th Dist. Summit No. 20692, 2002 Ohio App. LEXIS 788, *5 (Feb. 27, 2002), citing *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999). R.C. 2953.21(A)(1)(a) permits anyone convicted of a criminal offense "who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States" to "file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief." "The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief." R.C. 2953.21(A)(1)(a).

{¶6} "The post[-]conviction relief process is not itself a constitutional right" and petitioners receive no more rights than those granted by the statute. *State v. Wesson*, 9th Dist. Summit No. 25874, 2012-Ohio-4495, ¶ 7, citing *Calhoun* at 281. A petitioner seeking post-

conviction relief is not automatically entitled to a hearing. *Phillips* at *6, citing *Calhoun* at 282. "The trial court serves a gatekeeping function in post[-]conviction relief cases—it determines whether the petitioner will even receive a hearing." *Wesson* at ¶ 9, citing *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 51.

{¶7} In reviewing a petition for post-conviction relief, "a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact." *Calhoun* at 284. When assessing the credibility of supporting affidavits in post-conviction relief proceedings, the trial court shall consider all relevant factors, including:

> (1) whether the judge reviewing the post[-]conviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial.

*Id.* at 285. A trial court properly denies a petition for post-conviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief. *Id.* at 291. "If the court does not find grounds for granting relief, it shall make and file findings of fact and conclusions of law and shall enter judgment denying relief on the petition." Former R.C. 2953.21(G).

{¶8} "Generally, this Court reviews a trial court's denial of a post-conviction relief petition for an abuse of discretion." *State v. Childs*, 9th Dist. Summit No. 25448, 2011-Ohio-913, ¶ 9. Our review of a denial of a petition for post-conviction relief without a hearing is two-fold: First, we "review the trial court's decision to determine whether its findings are supported

by competent and credible evidence" and; second, if the findings are properly supported, we "review[] the trial court's decision in regard to its gatekeeping function for an abuse of discretion." *Wesson* at ¶ 11, citing *Gondor* at ¶ 52. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

## ASSIGNMENT OF ERROR ONE

> THE TRIAL COURT ERRED BY APPLYING THE DOCTRINE OF RES JUDICATA TO BAR SPAULDING'S GROUNDS FOR RELIEF.

{¶9} In his first assignment of error, Mr. Spaulding argues that the trial court erred by applying the doctrine of res judicata in denying grounds for relief 1, 4, 5, 9, 12, 13, 16-30, 32, and 33 in his petition for post-conviction relief when the grounds were supported by credible evidence dehors the record. As Mr. Spaulding has failed to comply with App.R. 16(A)(7) in this assignment of error, we decline to reach the merits of this argument and therefore overrule it. We will nonetheless address the trial court's application of res judicata where applicable in discussing Mr. Spaulding's third assignment of error.

{¶10} A petition for post-conviction relief may be properly dismissed without a hearing on the basis of res judicata. *State v. Griffin*, 9th Dist. Lorain No. 14CA010680, 2016-Ohio-2988, ¶ 14. Pursuant to the doctrine of res judicata:

> [A] final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

*State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus. To avoid the preclusive effect of res judicata, post-conviction relief claims must be "based on evidence outside of the original record that existed during direct appellate proceedings." *State v. Bulls*, 9th Dist. Summit No. 27713, 2015-Ohio-5094, ¶ 9.

{¶11} Nevertheless, "[p]resenting evidence outside the record does not automatically defeat the doctrine of res judicata." (Emphasis deleted.) *State v. Stallings*, 9th Dist. Summit No. 19620, 2000 Ohio App. LEXIS 1696, *4-5 (Apr. 19, 2000). The evidence "'must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim[.]'" *Id.* at *5, quoting *State v. Lawson*, 103 Ohio App.3d 307, 315 (12th Dist.1995), quoting *State v. Coleman*, 1st Dist. Hamilton No. C-900811, 1993 Ohio App. LEXIS 1485, *21 (Mar. 17, 1993). The evidence dehors the record must also "demonstrate that the claims advanced in the petition could not have been fairly determined on direct appeal based on the original trial court record without resorting to evidence outside the record." (Emphasis deleted.) *Stallings* at *5. Accordingly, Mr. Spaulding bears the burden to produce evidence dehors the record that would render the judgment void or voidable and also show that he could not have appealed the claim based upon information contained in the original record. *See State v. Nemchik*, 9th Dist. Lorain No. CA98CA007279, 2000 Ohio App. LEXIS 836, *4 (Mar. 8, 2000).

{¶12} Although Mr. Spaulding attached many lengthy exhibits as evidence dehors the record to his petition for post-conviction relief, he fails to identify or argue in his merit brief under this particular assignment of error exactly how the trial court erred by applying the doctrine of res judicata and denying grounds 1, 4, 5, 9, 12, 13, 16-30, 32, and 33 of his petition.

Instead, Mr. Spaulding simply states that his petition contained "specific factual allegations" supported by "credible evidence dehors the record" and then summarily concludes that "the trial court improperly applied res judicata to dismiss his grounds for relief * * * violat[ing] his due process guarantees." In his reply brief, Mr. Spaulding attempts to explain his failure to advance any specific argument within this assignment of error by stating:

> To be clear, Spaulding was—and is—limited by page limits, and thus he requests that his brief be read as a whole. * * * In pages 11-27 of his Merit Brief, Spaulding described in detail the ways in which his outside the record evidence would render the judgment void or voidable. To the extent that it is unclear, Spaulding incorporates herein the merits arguments that demonstrate he should have survived preclusion by res judicata.

{¶13} However, pages 11-27 of Mr. Spaulding's merit brief address his arguments relating to his third assignment of error, not his first. Moreover, an appellant may not rely on incorporation by reference to circumvent the page limitations set by Loc.R. 7(E)(1). *See State v. Smith*, 9th Dist. Lorain No. 99CA007399, 2000 Ohio App. LEXIS 5161, *26 (Nov. 8, 2000). *See also State v. Wright*, 9th Dist. Summit No. 18941, 1999 Ohio App. LEXIS 2980, *3 (June 23, 1999) (stating that an attempt to raise arguments by incorporation through reference to a motion that was before the trial court is improper.).

{¶14} Accordingly, we decline to address the merits of Mr. Spaulding's first assignment of error because he has failed to make an argument in accordance with App.R. 16(A)(7), which requires "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." *See Wright* at *3. *See also* App.R. 12(A)(2) ("The [C]ourt may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required

under App.R. 16(A)"); *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028, *22 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out").

{¶15} Mr. Spaulding's first assignment of error is overruled. However, the trial court's application of the doctrine of res judicata to various grounds for relief will nonetheless be addressed when necessary in our analysis of Mr. Spaulding's third assignment of error.

## ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN DISMISSING SPAULDING'S POST-CONVICTION PETITION WHEN HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT RELIEF OR, AT MINIMUM, AN EVIDENTIARY HEARING.

{¶16} In his third assignment of error, Mr. Spaulding argues that his petition for post-conviction relief contained sufficient operative facts and evidence dehors the record that supported his grounds for relief, and the trial court therefore erred in denying the petition and finding that he was not entitled to a hearing. We disagree.

{¶17} At the outset of its analysis in its entry denying post-conviction relief, the trial court reasoned that Mr. Spaulding's petition should be dismissed solely on the basis that he only made an insufficient, summary assertion of prejudice and "[w]hen it comes to alleging constitutional error, prejudice must be established by more than just speculation." Nevertheless, the trial court produced a 25-page judgment entry containing findings of fact and conclusions of law in compliance with Former R.C. 2953.21(G).

### Ineffective Assistance of Counsel

{¶18} A vast majority of Mr. Spaulding's grounds for relief alleged ineffective assistance of trial counsel for a variety of reasons, including failure to: investigate and present evidence; call certain witnesses to testify; hire certain experts to testify; effectively cross-

examine witnesses; provide "conflict-free" representation; and investigate and present alternate defense theories.

{¶19} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). To prove ineffective assistance of counsel, one must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Id.* at 687. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Prejudice can be shown by proving "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus. "[T]he Court need not address both *Strickland* prongs if an appellant fails to prove either one." *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 34. Furthermore, "[w]here [a] defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence dehors the record, res judicata is a proper basis for dismissing defendant's petition for post[-]conviction relief." (Emphasis deleted.) *State v. Cole*, 2 Ohio St.3d 112 (1982), syllabus. Mr. Spaulding was represented by new counsel in his direct appeal. *See Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126.

{¶20} For ease of analysis, we will rearrange and consolidate the grounds for relief contained in Mr. Spaulding's petition for post-conviction relief.

Ground for Relief 14

{¶21} Mr. Spaulding argued that his trial counsel were ineffective for failing to investigate and present evidence in his case.

{¶22} Mr. Spaulding attached to his petition an affidavit of Tom Fields, who was the investigator hired by the defense in this case. Mr. Spaulding argued that the affidavit demonstrates how counsel failed to properly prepare for trial and how Mr. Fields' investigation was hindered by defense counsel's inattention, passiveness, and lack of involvement in the case. He argued that Mr. Fields discovered several potential witnesses who could have testified that there were multiple shooters or masked men who committed the crimes, but counsel provided ineffective assistance by choosing not to call the potential witnesses to testify at trial.

{¶23} The trial court stated that the decision whether to call a witness falls within the rubric of trial strategy and that Mr. Fields failed to explain in his affidavit how he is qualified to render an opinion on counsel's performance. Moreover, the court stated that the "two shooters/masked men" theory was presented at trial and Mr. Fields' affidavit does not demonstrate a failure to investigate by defense counsel.

{¶24} We conclude that the trial court's findings are supported by competent and credible evidence. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland* at 691. Although Mr. Fields lists his concerns in the affidavit as to how Mr. Spaulding's case was handled in comparison to how he sees cases "typically" handled, his affidavit does not demonstrate a failure to investigate by defense counsel. While Mr. Fields avers that he never had

any "meaningful discussions" with attorney Jason Wells, he admittedly recalls having "significant discussions" with attorney Donald Walker about Mr. Spaulding's case. Mr. Fields avers that it was "difficult and slow to get guidance and information" and that he received discovery "very close to the trial date," but he does not claim that he never received guidance, information, or discovery from counsel. He avers that he made audio recordings of potential witnesses during his investigation and urged counsel to listen to them, but he is "uncertain" if counsel listened to all of the recordings. Mr. Fields does not claim, however, that counsel did not listen to the audio recordings or that counsel refused to listen to them. He also avers that he was "surprised and disheartened" that counsel decided to not call any witnesses at trial. Finally, Mr. Fields avers that he had "limited time and guidance[,]" but concludes that his investigation was nonetheless sufficient enough to create serious doubts as to the State's case.

{¶25} We conclude that Mr. Fields' affidavit does not contain sufficient operative facts to establish that the trial court incorrectly denied his petition without holding a hearing. While we certainly commend Mr. Fields on his desire to work tirelessly alongside counsel throughout the case and although we empathize with his apparent discomfort in working on a difficult investigation under what may have been unfamiliar and stressful time constraints, he nonetheless admits in his affidavit to having completed a sufficient investigation after engaging in significant discussions with lead counsel in this case. Although the amount of communication with counsel in this case may not have been what Mr. Fields is typically used to, it does not appear that counsel was deficient in performance or that Mr. Spaulding was prejudiced as a result. Also, an investigator's disagreement with counsel's decision to not call certain witnesses to testify at trial does not establish ineffective assistance of counsel. "'Decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics[]' and absent a showing of

prejudice, the failure to call witnesses will not be deemed erroneous." *City of Elyria v. Bozman*, 9th Dist. Lorain No. 01CA007899, 2002-Ohio-2644, ¶ 17, quoting *State v. Coulter*, 75 Ohio App.3d 219, 230 (12th Dist.1992). We conclude that the trial court did not err or abuse its discretion in denying this ground for relief without a hearing.

<u>Grounds for Relief 1, 4, 29, 30, 32, 31, and 6</u>

**{¶26}** Mr. Spaulding argued that defense counsel were ineffective for failing to call several witnesses to testify at trial.

**{¶27}** He attached an affidavit from Keyona B., who avers that, at approximately 2:00 A.M. on December 15, 2011, Ms. Singleton arrived at Keyona's residence and told her some masked men who she did not know had just come into a house on Grant Street and started shooting. She avers that Ms. Singleton had drugs and a gun with her. Keyona also acknowledges that she was contacted by Mr. Spaulding's investigator in this case.

**{¶28}** Mr. Spaulding also attached a police report completed by Detective Richard Morrison, which states that Shera C. was interviewed at the scene on Grant Street. Shera, who is Mr. Thomas' cousin, informed police that Mr. Thomas told her that when Mr. Griffin was shot, "some masked men came into his house and he ran them out."

**{¶29}** Mr. Spaulding also attached the affidavit of Shaunday H., who avers that she was friends with Ms. Singleton and Mr. Spaulding. On December 15, 2011, Cierra H. called Shaunday when Ms. Singleton came to Cierra's house. Shaunday overheard Ms. Singleton say, "[T]hese dudes came in my boyfriend's house trying to rob him." She also spoke to Mr. Spaulding's investigator in this case.

**{¶30}** In Mr. Fields' affidavit, he avers that he spoke with both Cierra and Shaunday. Cierra told him that, at approximately 2:00 A.M. on December 15, 2011, Ms. Singleton arrived

at Cierra's residence and stated that "two guys came into the house and started shooting."  Ms. Singleton had drugs and a gun with her and appeared scared when a silver car with two men in it pulled up in front of the house.  Shaunday told Mr. Fields that she was on the phone with Cierra when Ms. Singleton arrived that night and confirmed that she overheard what Ms. Singleton said to Cierra.

{¶31}  Mr. Spaulding also attached the affidavit of Niechelle B. and a police report by Detective John Bell.  Detective Bell testified that he is not related to Niechelle in any way.  Niechelle avers that she gave Ms. Singleton and Mr. Thomas a ride back to Tallmadge after the shooting of Mr. Griffin, and Mr. Thomas said he thought they were being robbed, but did not know who would want to rob them.  She avers that both Ms. Singleton and Mr. Thomas "thought that there was more than one shooter."  Niechelle spoke to two attorneys before trial and then testified at trial.  In the police report, Detective Bell states that he interviewed Niechelle and she discussed giving the victims a ride three hours before they were murdered.  She told the detective that Mr. Thomas mentioned firing a gun, which may have caused the suspects to leave after the Griffin shooting.  Mr. Thomas did not mention to Niechelle that he knew the suspects.  Niechelle did, in fact, testify at Mr. Spaulding's trial, but defense counsel repeatedly and successfully objected to her testifying on direct examination as to anything Mr. Thomas told her on December 15, 2011.  She was then cross-examined by defense counsel and later asked during redirect examination, "Did [Mr. Thomas] suggest any knowledge of [who] did this?"  She answered, "No."  When she was asked what Mr. Thomas had to say about that topic, she replied, "He really was just, like, I don't know.  He was saying, 'I don't know who could have done this.'"

{¶32}  In Mr. Fields' affidavit, he avers that he spoke with both Dan F. and Pat F.  Dan and Pat lived next door to the house on Grant Street where the shootings occurred.  Mr. Fields

avers that Dan and Pat told him it is a known drug house and that a drive-by shooting recently happened there. Mr. Fields avers that Dan told him he saw Ms. Singleton and Mr. Thomas get out of a cab and soon thereafter he heard gun shots. Dan looked and saw a man in the driveway and heard at least one other person inside the house. It sounded to him like the house was being "ransacked." An upset man came out of the house to tell another man who was on his cell phone to move the black Chevy Impala that was parked in the driveway. Dan did not mention seeing anyone with braids.

{¶33} Mr. Spaulding also attached an affidavit from William S. to his petition. William avers that he overheard Mr. Spaulding in jail talking about how he was being "railroaded." William knew both Mr. Griffin and a man named "Manny" as dope dealers who lived close to one another on Grant Street. William avers that Manny told him that Mr. Griffin was involved in a recent robbery of Manny. Moreover, William believes Manny "confessed" to shooting Mr. Griffin afterward when he told William, "[Y]ou heard about the boys down the road? That's what those n*****s get for robbing me." William also avers that Manny threatened to shoot him sometime later over forty dollars.

{¶34} The trial court found that Mr. Fields interviewed Keyona, Shaunday, and Cierra, and that Niechelle testified at trial. The "two shooters/masked men" theory was presented at trial and witnesses were cross-examined regarding it. Furthermore, the court found that Mr. Spaulding's evidence dehors the record was only marginally significant in advancing his theory and he failed to explain how his arguments could not have been raised on direct appeal; thus, they were barred by the doctrine of res judicata.

{¶35} We conclude that some of the trial court's findings are supported by competent and credible evidence. Once again, "'[d]ecisions regarding the calling of witnesses are within

the purview of defense counsel's trial tactics[]' and absent a showing of prejudice, the failure to call witnesses will not be deemed erroneous." *Bozman*, 2002-Ohio-2644, at ¶ 17, quoting *Coulter*, 75 Ohio App.3d 219, at 230. Mr. Spaulding has not shown how counsel's decision to not call these individuals to testify as witnesses was anything other than a tactical decision or that it fell outside the range of competent representation. *See State v. Willard*, 9th Dist. Medina No. 05CA0096-M, 2006-Ohio-5071, ¶ 36. Although several of these individuals may have spoken to, or overheard, either the victims or Mr. Spaulding at some point in time, most of them were not eyewitnesses who were personally at the scene of either shooting and their potential testimony does not bear upon the operative facts of this matter. *See State v. Hudson*, 8th Dist. Cuyahoga No. 98499, 2013-Ohio-1444, ¶ 31. One of them, Niechelle, did in fact testify at Mr. Spaulding's trial and was subjected to cross-examination by defense counsel. Although Mr. Fields avers that Dan and Pat told him they were next door when one of the shootings occurred, we agree with the trial court that it is unclear which shooting incident Dan and Pat described to Mr. Fields, and Mr. Spaulding did not attach affidavits from either Dan or Pat to his petition. Moreover, the jury watched videos at trial of the first and third police interrogations of Mr. Spaulding, where Mr. Spaulding urged police to speak to Cierra and Keyona regarding "four masked men" being mentioned by Ms. Singleton. *See Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, at ¶ 31-33. On cross-examination, defense counsel questioned Mr. Griffin as to whether the shooter wore a mask. We fail to see how counsel's decision to not call these additional witnesses to present essentially cumulative evidence to hopefully "strengthen" the "two shooters/masked men" theory demonstrates deficient performance or a resulting prejudice to support an ineffective assistance of counsel claim.

**{¶36}** We do, however, disagree with the trial court's determinations that the affidavits submitted were only marginally significant and Mr. Spaulding's claims were barred by the doctrine of res judicata. The affidavits are evidence dehors the record pertaining directly to whether more than one shooter or masked men were responsible for the underlying crimes and, therefore, meet the threshold standard of cogency. Nevertheless, "this Court will not reverse a correct judgment merely because of a flaw in the trial court's analysis." *Wesson*, 2012-Ohio-4495, at ¶ 31. *See also State v. Kiley*, 9th Dist. Lorain No. 12CA010254, 2013-Ohio-634, ¶ 10. Regardless of whether we disagree with the trial court's application of the doctrine of res judicata here, an appellate court "'shall affirm a trial court's judgment that is legally correct on other grounds, that is, one that achieves the right result for the wrong reason, because such an error is not prejudicial.'" *Wesson* at ¶ 31, quoting *Rude v. NUCO Edn. Corp.*, 9th Dist. Summit No. 25549, 2011-Ohio-6789, ¶ 21, quoting *Cook Family Invests. v. Billings*, 9th Dist. Lorain Nos. 05CA008689 and 05CA008691, 2006-Ohio-764, ¶ 19.

**{¶37}** In Mr. Spaulding's case, we conclude that the trial court did not err or abuse its discretion in denying these grounds for relief without a hearing because it correctly found that decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics.

Grounds for Relief 2, 7, 8, 11, and 15

**{¶38}** Mr. Spaulding argued that defense counsel was ineffective for failing to hire several experts to testify at trial.

**{¶39}** Mr. Spaulding claimed that counsel were ineffective for failing to call an expert in cellular tracking to testify at trial, such as computer forensic examiner Mark Vassel, who could have testified that a person's location cannot be pinpointed precisely using cell phone tower data.

Mr. Spaulding attached a report from Mr. Vassel to his petition in which Mr. Vassel opines that some of Detective Robert Moledor's testimony at trial is not supported by data. Mr. Vassel avers that "[a] person's location cannot be pinpointed so precisely by using data from cell phone towers." Although he does not disagree that the evidence shows Mr. Spaulding's cell phone connected to the Grant Street cell tower at some point on December 15, 2011, he avers that it is "just as likely that the defendant's handset device was at least a mile away from the crime scene."

{¶40} The trial court found that Mr. Spaulding did not point to any American Bar Association ("ABA") guidelines requiring defense counsel to hire experts to advance marginally significant evidence in rebuttal to the State's evidence. The court further found that, while Detective Moledor testified about the ability to map a person's location by cell phone use, he clarified that Mr. Spaulding's location could only be determined to be in the sector or zone of the Grant Street cell tower and the location could not be pinpointed. This was contrary to Mr. Spaulding's statement to the police that he had been on the other side of town. Furthermore, the court found that counsel chose to cross-examine Detective Moledor instead of presenting an independent witness, which is a matter of trial strategy.

{¶41} We conclude that the trial court's findings are supported by competent and credible evidence. The trial court correctly stated that Detective Moledor's testimony did not indicate an exact pinpoint of Mr. Spaulding's location, as Mr. Spaulding has argued. Detective Moledor testified at trial that he uses mapping software to display the "general area" of a cell phone's location when it uses a cell tower. In Mr. Spaulding's case, Detective Moledor was able to narrow down a location for certain times and dates for Mr. Spaulding's cell phone and he only concluded that Mr. Spaulding's phone placed multiple calls between 2:04 A.M. and 2:15 A.M.,

and between 7:58 A.M. and 8:08 A.M., on December 11, 2011, using cell phone towers in the vicinity of 1104 Grant Street.

{¶42} Mr. Spaulding also argued that defense counsel were ineffective for failing to call an eyewitness expert, such as Dr. Harvey Schulman, who could have testified at trial and challenged Mr. Wilbur's and Mr. Griffin's eyewitness identification testimony. He argued that Mr. Wilbur's identification was suspect, unreliable, and not convincing because his identification evolved over time and his second identification was more detailed. He further argued that Mr. Griffin identified Mr. Spaulding even though evidence existed that the shooter wore a mask. Moreover, Mr. Griffin failed to identify Mr. Spaulding in the first photo array, but then positively identified him in the second photo array.

{¶43} Mr. Spaulding attached a report to his petition from Dr. Schulman, a retired psychology professor trained in the field of cognitive psychology, specifically the areas of attention, perception, and memory. Dr. Schulman states in his report that Mr. Griffin's eyewitness identification may have been influenced by several factors, including: poor viewing conditions, Mr. Griffin's focus on the gun, other reports that the assailant may have worn a mask, and officers informing him in between the two photo arrays that Ms. Singleton and Mr. Thomas had been murdered. Dr. Schulman further states that Mr. Wilbur's eyewitness identification may have been influenced by several factors, including: less than ideal visibility conditions, multiple targets to view, his only identification occurring in court nine months after the crime despite having said he was unable to describe the face of the individual he saw, and the difficulty of cross-racial identification.

{¶44} The trial court found that the ABA Guidelines do not mandate the hiring of experts to challenge the State's evidence. Moreover, the court found that defense counsel cross-

examined both Mr. Wilbur and Mr. Griffin at length about their eyewitness identifications of Mr. Spaulding, including questioning Mr. Griffin as to whether the shooter wore a mask.

{¶45} We conclude that the trial court's findings are supported by competent and credible evidence. First, by his own admission, Dr. Schulman states in his report that it contains only a list of factors that "*may* have operated in this case" and "*may* have influenced the testimony" of Mr. Griffin and Mr. Wilbur. (Emphasis added.). Nothing in the report suggests that these factors actually affected the testimony of Mr. Griffin or Mr. Wilbur. Second, defense counsel cross-examined both Mr. Wilbur and Mr. Griffin extensively as to their eyewitness identifications of Mr. Spaulding. Counsel questioned Mr. Wilbur as to what he saw and heard at the crime scene, the weather conditions that day, any distractions such as buckling his son's seat belt, whether Mr. Wilbur was intoxicated or on medications at that time, whether he saw the suspect's face or just some braided hair, Mr. Wilbur's description of the suspect, and why he did not identify Mr. Spaulding during his first or second interactions with police and instead waited until a third interview to give a "complete statement." Counsel also questioned Mr. Griffin at his deposition as to his relationship with David "Frog" Clark, whether he had been involved in a robbery earlier on the night he was shot, whether he had used drugs or consumed alcohol the night he was shot, whether he had been selling drugs the night he was shot, what clothes the shooter wore, how far away the shooter was from Mr. Griffin, whether the shooter was alone, whether he previously told anyone that the shooter wore a red mask, and whether he had been on a lot of medications while in the hospital.

{¶46} Mr. Spaulding argued that defense counsel were ineffective for failing to hire and call an expert, such as Dr. Sergio Bergese, to review Mr. Griffin's medical records and challenge Nurse Lynne Trenkelbach's testimony. He argued Mr. Griffin was still sedated when he first

identified Mr. Spaulding in the second photo array at the hospital. He also argued that shutting the sedation off approximately five minutes before police spoke to Mr. Griffin, as Nurse Trenkelbach testified, was an insufficient amount of time for the medication to be out of his system.

{¶47} Mr. Spaulding attached a report to his petition from Dr. Bergese, Director of Neuroanesthesia at the Ohio State University. Dr. Bergese concludes in his report that the drug propofol affects a person's cognitive recovery after the drug is stopped for at least 90 minutes after having been used for several days. He states that Mr. Griffin's medical records showed him being on a propofol drip for five days. Along with propofol, Mr. Griffin had been on Ativan and morphine, which Dr. Bergese states would prolong the timeframe for a full cognitive recovery into several hours. Dr. Bergese also states that Mr. Griffin's medical records showed no change in sedation status on December 20, 2011, between 10:00 A.M. and 12:00 P.M.

{¶48} The trial court found that defense counsel had Mr. Griffin's medical records prior to trial. Moreover, the court found that counsel cross-examined Nurse Trenkelbach extensively about the effects of Mr. Griffin's medications and whether they may have affected his judgment when he identified Mr. Spaulding, and counsel's decision to rely on cross-examination instead of calling an expert is not ineffective assistance of counsel.

{¶49} We conclude that the trial court's findings are supported by competent and credible evidence. Mr. Griffin's medical records were entered into the record at trial. Defense counsel questioned Nurse Trenkelbach extensively at trial and asked who was allowed to visit Mr. Griffin at the hospital, whether his visits from family members were private, whether he was aware of the murders of Ms. Singleton and Mr. Thomas, whether family members may have told

him who they believed was responsible for the murders, what medications he was on and when he received them, and the circumstances surrounding the photo arrays.

{¶50} Mr. Spaulding argued that defense counsel were ineffective for failing to call a ballistics expert, such as John Nixon, who could have challenged Ohio Bureau of Criminal Identification and Investigation ("BCI") forensic scientist Michael Roberts' testimony that cartridges found at both crime scenes were fired from the same gun, Mr. Roberts' methods of comparison, and his qualifications to determine whether the cartridges came from the same gun.

{¶51} Mr. Spaulding attached a report from Mr. Nixon, who cites to and attaches a 2009 report published by the National Academy of Sciences ("NAS Report"). Mr. Nixon emphasizes that, with regard to toolmark uniqueness, the NAS Report states: "The validity of the fundamental assumptions of uniqueness and reproducibility of firearms-related toolmarks has not yet been fully demonstrated * * *." Mr. Nixon states that the NAS Report contains "a lot of criticism" regarding firearm toolmark comparisons. He also cites to a 2013 letter from U.S. Department of Justice Special Counsel John Crabb to a Mississippi prosecutor ("2013 Letter") as providing the FBI's official position on firearm toolmark uniqueness as "not permit[ting] examiner testimony that a specific gun fired a specific bullet to the exclusion of all other guns in the world." He claims "the concept of uniqueness has been disproven," no firearm or unfired ammunition from the same batch existed in this case which diminished confidence in the results, and Mr. Roberts' testimony contained 31 statements that were misleading or false. He also challenges the December 22, 2011, BCI report as "epitomi[zing] all that is wrong with laboratory reports" and speculates that "two shooters were probably responsible."

{¶52} The trial court found that Mr. Nixon did not elaborate on how he is qualified to render an opinion that it is unlikely one shooter shot both victims. The court also found that Mr.

Spaulding admitted in his petition that defense counsel had the BCI report prior to trial, so the issue was barred by the doctrine of res judicata. Furthermore, the court found that speculation that different tactics may have improved the defense does not establish ineffective assistance of counsel, and counsel's decision to rely on cross-examination instead of calling an expert witness to testify is not ineffective assistance.

{¶53} We conclude that some of the trial court's findings are supported by competent and credible evidence. While Mr. Nixon challenges Mr. Roberts' education in the areas of metallurgy, engineering, and statistics, he concedes that "Mr[.] Roberts is a court qualified expert with regard to performing comparisons." Instead of hiring an expert, counsel chose to cross-examine Mr. Roberts at trial as to his BCI report listing a variety of manufacturers that could have possibly made the firearm used to fire the cartridges recovered in Mr. Spaulding's case. Mr. Spaulding has not shown how counsel's choice to cross-examine the witness instead of calling another expert to testify was anything other than a legitimate, tactical decision, which cannot establish ineffective assistance of counsel. *See State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 66.

{¶54} We disagree with the trial court's determination that because Mr. Spaulding admitted his defense counsel had the BCI report prior to trial, his claim was barred by res judicata. The NAS Report and 2013 Letter were not made part of the trial record and purportedly discredit statements contained in the BCI report; thus, they are evidence dehors the record that meet the threshold standard of cogency. Although this particular claim is not barred by res judicata, we again reiterate that "this Court will not reverse a correct judgment merely because of a flaw in the trial court's analysis[,]" but we shall instead "'affirm a trial court's judgment that is legally correct on other grounds, that is, one that achieves the right result for the

wrong reason, because such an error is not prejudicial.'" *Wesson*, 2012-Ohio-4495, at ¶ 31, quoting *Rude*, 2011-Ohio-6789, at ¶ 21, quoting *Billings*, 2006-Ohio-764, at ¶ 19. We conclude that the trial court did not err or abuse its discretion in denying this particular ground for relief without a hearing because it correctly found that counsel's decision to rely on cross-examination instead of calling a ballistics expert to testify is not ineffective assistance. *See Hunter* at ¶ 66 ("[T]he failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel").

{¶55} Overall, we conclude that Mr. Spaulding's arguments that defense counsel did not "thoughtfully and diligently" consider the evidence and that "[t]here was no thorough cross-examination" of any experts at trial are without merit. "[I]t is [well-]settled that a post-conviction petition does not demonstrate ineffective assistance of counsel even when it presents a new expert opinion that is different from the theory used at trial." *State v. McNeill*, 9th Dist. Lorain No. 01CA007800, 2001 Ohio App. LEXIS 3669, *11 (Aug. 22, 2001). *See also State v. Morgan*, 9th Dist. Medina No. 07CA0124-M, 2008-Ohio-5530, ¶ 40. An attorney's reliance on cross-examination in lieu of calling an expert to testify at trial is a legitimate, tactical decision and does not constitute ineffective assistance of counsel. *See Hunter* at ¶ 66. Mr. Spaulding has not shown how counsel's decision to cross-examine the State's witnesses instead of calling defense experts to testify at trial constituted deficient performance or resulted in any prejudice. Mr. Spaulding admitted in his petition that defense counsel had the BCI report prior to trial. The cell phone records and Mr. Griffin's medical records were entered into evidence at trial. Mr. Spaulding also previously raised a similar argument in his direct appeal claiming ineffective assistance of counsel with regard to counsel's efforts to challenge Mr. Griffin's eyewitness identification, which was rejected. *See Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, ¶ 78-

92. We conclude that the trial court did not err or abuse its discretion in denying these grounds for relief without a hearing.

Ground for Relief 12

**{¶56}** Mr. Spaulding argued that defense counsel were ineffective for failing to use Mr. Griffin's medical records to impeach Nurse Trenkelbach and suppress Mr. Griffin's identification of Mr. Spaulding, as Mr. Griffin was "under the influence of heavy medication when the police conducted a photo array with him." He argued that although counsel filed a motion to suppress alleging that the photo array did not comply with R.C. 2933.83 and was unduly suggestive, counsel nonetheless could have used Mr. Griffin's medical records for impeachment and did not do so. Mr. Spaulding attached Mr. Griffin's medical records in support of his claims.

**{¶57}** The trial court found that this argument was barred by the doctrine of res judicata because it was based entirely on evidence in the record. The court found that any arguments that counsel should have emphasized certain points during cross-examination could have been raised on direct appeal. The court further found that Dr. Bergese's report did not significantly advance an ineffective assistance of counsel claim and any speculation that a different tactic may have improved Mr. Spaulding's defense does not demonstrate ineffective assistance.

**{¶58}** We conclude that the trial court's findings are supported by competent and credible evidence. Counsel did, in fact, cross-examine Nurse Trenkelbach extensively at trial, specifically as to what medications Mr. Griffin was on, when he received those medications, and the circumstances surrounding the subsequent photo arrays. Again, "decisions regarding cross-examination are within trial counsel's discretion, and cannot form the basis for a claim of ineffective assistance of counsel." *State v. Diaz*, 9th Dist. Lorain No. 04CA008573, 2005-Ohio-

3108, ¶ 26. *See also State v. Rafferty*, 9th Dist. Summit No. 23217, 2007-Ohio-3997, ¶ 15, quoting *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146 ("'The extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel.'"). Mr. Griffin's medical records were entered into evidence at trial. Any challenge related to counsel's use or non-use of the medical records to impeach Nurse Trenkelbach could have been made on direct appeal, and is therefore now barred by the doctrine of res judicata. Once again, Mr. Spaulding did raise a related argument in his direct appeal claiming ineffective assistance of counsel with regard to counsel's efforts to challenge Mr. Griffin's eyewitness identification, which was rejected. *See Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, ¶ 78-92. We conclude that the trial court did not err or abuse its discretion in denying this ground for relief without a hearing.

Grounds for Relief 17 and 18

**{¶59}** Mr. Spaulding argued that defense counsel was ineffective for failing to investigate and discover evidence to impeach Mr. Wilbur. Mr. Wilbur was arrested and charged with possession of marijuana ten days before the shootings, so Mr. Spaulding claimed that Mr. Wilbur could have been "under the influence of marijuana at the time of the shooting [and] his ability to recall would have been compromised." He further argued that counsel "not only failed to exploit the flaws in Wilbur's testimony, [but] also failed to impeach Wilbur with the fact that he has brain damage."

**{¶60}** Mr. Spaulding attached various documents from Mr. Wilbur's marijuana case as well as the docket of a previous criminal case involving Mr. Wilbur, which includes an entry from March 23, 2007, stating in part, "upon information that the defendant is currently

hospitalized in Massachusetts from a condition resulting in brain damage, community control * * * is hereby terminated."

**{¶61}** The trial court found that these claims were barred by the doctrine of res judicata and Mr. Spaulding's evidence dehors the record does not even marginally advance his ineffective assistance claim. The court found that any arguments that cross-examination should have emphasized certain points could have been raised on direct appeal and speculation that a different tactic may have improved Mr. Spaulding's defense does not demonstrate ineffective assistance of counsel.

**{¶62}** We conclude that some of the trial court's findings are supported by competent and credible evidence. Once again, defense counsel questioned Mr. Wilbur extensively as to what he saw and heard, the weather conditions, any distractions that were present, whether Mr. Wilbur was intoxicated or on medications, whether he saw the suspect's face or just his braided hair, Mr. Wilbur's description of the suspect, and why he waited until a third interview with the police to give a "complete statement." "'The extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel.'" *Rafferty*, 2007-Ohio-3997, at ¶ 15, quoting *Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, at ¶ 146. We again disagree with the trial court's determination that these claims were barred by res judicata, as Mr. Spaulding presented evidence dehors the record that would have challenged the credibility of eyewitness testimony, therefore meeting the threshold standard of cogency. But, because the extent and scope of cross-examination is nonetheless within the ambit of trial strategy, we conclude that the trial court did not err or abuse its discretion in denying these grounds for relief without a hearing. *See Wesson*, 2012-Ohio-4495, at ¶ 31, quoting *Rude*, 2011-Ohio-6789, at ¶ 21, quoting *Billings*, 2006-Ohio-764, at ¶ 19 ("[T]his Court

will not reverse a correct judgment merely because of a flaw in the trial court's analysis[,]" but shall "'affirm a trial court's judgment that is legally correct on other grounds * * *.'").

## Ground for Relief 9

{¶63} Mr. Spaulding argued that defense counsel were ineffective and ill-prepared for the mitigation phase of trial.

{¶64} Mr. Spaulding attached an affidavit from attorney Susan Moran. Although she was not hired with the formal title of "mitigation specialist," it was understood that she would perform the functions of a mitigation specialist. *See Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, at ¶ 170. Ms. Moran avers that she only had contact with attorney Walker and she only spoke to attorney Wells approximately five times, which she categorizes as "highly unusual." She never met attorney Wells until the first day of the mitigation phase. In Mr. Spaulding's case, there was only one team meeting, whereas in Ms. Moran's experience there are typically ten-to-fifteen team meetings. Attorney Wells was not present at the meeting in Mr. Spaulding's case. Ms. Moran spoke to attorney Walker, but felt like he was ill-prepared and "did not quite grasp what mitigation was all about." Right before the mitigation phase began, Ms. Moran concluded that attorney Wells "had nothing prepared," so she handwrote an opening statement for him to read. Attorney Wells initially used Ms. Moran's statement, but then purportedly strayed from it and instead used his own words. Consequently, he mistakenly told the jury that they would hear from a particular witness, although that person was now deceased. Ms. Moran avers that "it appeared to [her] that the defense witnesses had not been prepped." She also avers that she handed attorney Walker notes with questions that she believed needed to be asked of witnesses, and in her opinion neither attorney properly rehabilitated the witnesses. She felt frustrated and disheartened because she believed Mr. Spaulding's case was "winnable."

{¶65} Mr. Spaulding also attached an affidavit from Dr. John Fabian, a forensic psychologist and clinical neuropsychologist hired by the defense to assist with mitigation. Dr. Fabian avers that he was concerned that attorney Walker "didn't seem to grasp the idea, concept, and process of mitigation" and he urged attorney Walker to hire Ms. Moran as a mitigation specialist. Dr. Fabian avers that he never spoke to attorney Wells. Dr. Fabian contacted both attorney Walker and Judge Gallagher in November of 2012 to request more time to fully conduct a mitigation investigation, and Judge Gallagher then continued sentencing in this matter until the end of January 2013. He avers that Mr. Spaulding's family appeared to not trust the attorneys and were very frustrated with what the attorneys did not do at trial, which hindered the ability to build a rapport with the family. Dr. Fabian avers that he recently learned that there were hospital records regarding Mr. Spaulding apparently having four separate head injuries, although Dr. Fabian's own report listed no head injuries, which he claims was due to not having the hospital records. Mr. Spaulding also purportedly ingested bleach once as a child.

{¶66} The trial court found that part of this argument is barred by res judicata because ineffective assistance of counsel during the mitigation phase was raised and rejected in Mr. Spaulding's direct appeal. *See Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, at ¶ 168-180. Moreover, the court found that Dr. Fabian failed to explain how knowledge of head injuries and ingesting bleach could have been mitigating in Mr. Spaulding's case or how his report was rendered unreliable because that information was missing. The court also found that Ms. Moran did not elaborate on what aspects of the case she believed to be "winnable." The court found that the truth or falsity of Dr. Fabian's and Ms. Moran's affidavits is inconsequential, as the information contained within them does not demonstrate ineffective assistance. The court found that given the work performed and evidence presented during mitigation, "it was a reasonable

strategic decision for counsel to create sympathy for Spaulding's family in mitigation[,]" as Spaulding himself is an unsympathetic individual. Even debatable trial tactics do not constitute ineffective assistance and will not be second-guessed after a thorough mitigation is conducted. The court found that Mr. Spaulding failed to demonstrate prejudice resulting from any of the alleged mitigation errors, he presented no evidence dehors the record identifying specific, additional evidence for mitigation, and he failed to demonstrate how, but for the alleged errors, his sentence would have been different.

{¶67} We conclude that the trial court's findings are supported by competent and credible evidence. "The presentation of mitigating evidence is a matter of trial strategy." *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 189. "Counsel in a capital case has an 'obligation to conduct a thorough investigation of the defendant's background' to determine the availability of mitigating evidence." *Id.*, quoting *Williams v. Taylor*, 529 U.S. 362, 396 (2000). "[I]nvestigations into mitigating evidence 'should comprise efforts to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.'" (Emphasis sic.) *Id.* at ¶ 190, quoting *Wiggins v. Smith*, 539 U.S. 510, 524 (2003), quoting ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases, section 11.4.1(C), 93 (1989).

{¶68} Mr. Spaulding previously raised in his reply brief in his direct appeal an argument that defense counsel and their experts were unprepared for the mitigation phase. *See Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, at ¶ 178. As such, this argument is now barred by the doctrine of res judicata. In rejecting his argument, the Supreme Court of Ohio specifically stated that "Spaulding's allegations do not prove ineffective assistance." *Id.* at ¶ 179. The Court also rejected Mr. Spaulding's arguments that counsel never hired a mitigation specialist and failed to

present psychological evidence during the mitigation phase. *Id.* at ¶ 169-177. Mr. Spaulding has not presented any evidence dehors the record beyond Ms. Moran and Dr. Fabian's affidavits referring to incidents that they believed indicated a lack of preparation by defense counsel. As noted by both the trial court and the Supreme Court, Mr. Spaulding has not identified any specific information that a mitigation specialist would have uncovered that had not already been found by the defense expert or explained how that information would have prompted the jury to recommend a life sentence. *See id.* at ¶ 171. We conclude that the trial court did not err or abuse its discretion in denying this ground for relief without a hearing.

Ground for Relief 5

{¶69} Mr. Spaulding argued that defense counsel were ineffective for failing to effectively cross-examine Detective Morrison at trial as to the contents of a police report.

{¶70} Mr. Spaulding attached a copy of Detective Morrison's report to his petition, which states that Shera informed the detective that Mr. Thomas told her after Mr. Griffin was shot that "some masked men came into his house and he ran them out."

{¶71} The trial court stated that the alleged error appeared on the face of the record, Mr. Spaulding's evidence dehors the record did not significantly advance his claim of ineffective assistance of counsel, and the issue was barred by the doctrine of res judicata.

{¶72} Again, we must disagree with the trial court's determination that res judicata bars Mr. Spaulding's claim here. Detective Morrison's report was not made part of the trial record and is therefore evidence dehors the record. The report meets the threshold standard of cogency because it contains information supporting Mr. Spaulding's theory of the case that some "masked men" allegedly committed these crimes. However, we must stress once more that "'[t]he extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial

tactics do not establish ineffective assistance of counsel.'" *Rafferty*, 2007-Ohio-3997, at ¶ 15, quoting *Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, at ¶ 146. Counsel cross-examined Detective Morrison regarding his investigation, including the interviews of Mr. Spaulding, Mr. Griffin's identification of Mr. Spaulding in the photo arrays, the rash of killings in the Grant Street neighborhood, the determination of Mr. Spaulding's location by pinging cell phone towers, and Mr. Wilbur's statements to police. Because decisions regarding the cross-examination of Detective Morrison were within defense counsel's discretion, we conclude that the trial court did not err or abuse its discretion in denying this ground for relief without a hearing. *See Wesson*, 2012-Ohio-4495, at ¶ 31, quoting *Rude*, 2011-Ohio-6789, at ¶ 21, quoting *Billings*, 2006-Ohio-764, at ¶ 19 ("[T]his Court will not reverse a correct judgment merely because of a flaw in the trial court's analysis[,]" but shall "'affirm a trial court's judgment that is legally correct on other grounds * * *.'").

## Ground for Relief 33

**{¶73}** Mr. Spaulding argued that trial counsel was ineffective because attorney Walker simultaneously represented both Mr. Spaulding in this case and Tarheasia Norwood in two other criminal cases, creating a "clear conflict of interest."

**{¶74}** Mr. Spaulding attached to his petition a police report by Officer Richard O'Brien, which states that Mr. Thomas told the officer that "Anthony Shellman's girlfriend" was present when Mr. Griffin was shot, but that she left the area prior to officers arriving on scene. Mr. Shellman testified at trial that Ms. Norwood was his girlfriend at that time. Mr. Spaulding attached another police report by Officer Justin Ingham, which states that the officer spoke to Ms. Norwood briefly at the scene, but while he was going after other people and telling them not to leave the scene, Ms. Norwood got into a car and left. He also attached various, additional

court documents showing that attorney Walker represented Ms. Norwood in two separate criminal cases in June of 2012. Mr. Spaulding conceded that he never objected to the conflict at trial, but claimed that he "was not given the opportunity to object to the conflict because he was never made aware of it" and that "prejudice must be presumed." Mr. Spaulding claimed that he and Ms. Norwood had "competing interests" and that his investigator was unable to locate Ms. Norwood.

{¶75} The trial court found that Mr. Spaulding cannot demonstrate prejudice because Ms. Norwood did not testify at trial and the evidence dehors the record does not show an actual conflict of interest. Moreover, the court found that Mr. Spaulding failed to argue how any potential conflict adversely affected attorney Walker's performance.

{¶76} "The Sixth Amendment right to the effective assistance of counsel secures to a criminal defendant both the right to competent representation and the right to representation that is free from conflicts of interest." *State v. Sibley*, 9th Dist. Lorain No. 16CA010908, 2017-Ohio-7015, ¶ 7, citing *Wood v. Georgia*, 450 U.S. 261, 271 (1981). However, "the United States Constitution is violated by an actual conflict of interest, not a possible one." *State v. Gillard*, 78 Ohio St.3d 548, 552 (1997). A possible conflict exists if the "'interests of the defendants may diverge at some point so as to place the attorney under inconsistent duties.'" *State v. Dillon*, 74 Ohio St.3d 166, 168 (1995), quoting *Cuyler v. Sullivan*, 446 U.S. 335, 356 (1980), fn. 3 (Marshall, J., concurring in part and dissenting in part). Contrarily, an actual conflict is "a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 (2002), fn. 5. "[A] defendant who fail[s] to object at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Gillard* at 552. Thus, Mr. Spaulding bears the burden of demonstrating that attorney Walker "actively represented

conflicting interests," and that the conflict "actually affected the adequacy of his representation." *See Sibley* at ¶ 9, quoting *Mickens* at 171, quoting *Cuyler* at 349-350. *See also State v. Jackson*, 9th Dist. Summit No. 27478, 2015-Ohio-4356, ¶ 15, citing *Cuyler* at 348.

**{¶77}** We conclude that the trial court's findings are supported by competent and credible evidence. Ms. Norwood never testified at Mr. Spaulding's trial and nothing in the evidence dehors the record demonstrates that Ms. Norwood would have testified as to multiple, masked shooters, as Mr. Spaulding now speculates. Apart from broadly claiming that he and Ms. Norwood had "competing interests," Mr. Spaulding failed to explain what those competing interests were and failed to show any actual conflict of interest. Mr. Spaulding further failed to demonstrate how representation of Ms. Norwood in two other separate cases adversely affected attorney Walker's performance in Mr. Spaulding's case or how Mr. Spaulding suffered any prejudice from attorney Walker's representation of Ms. Norwood. We conclude that the trial court did not err or abuse its discretion in denying this ground for relief without a hearing.

### Grounds for Relief 20, 21, 23, 24, 22, and 25

**{¶78}** Mr. Spaulding argued in his petition that counsel were ineffective for failing to investigate and present evidence of additional, alternate defense theories, specifically: (1) Mr. Thomas and Mr. Griffin were shot because of their involvement in the murder of Mr. Clark or because of their association with those who committed the murder; (2) Mr. Thomas and Mr. Griffin were shot to prevent their testimony in the Clark murder trial; (3) Mr. Thomas and Mr. Griffin were shot because Mr. Thomas was a gang member, and Mr. Griffin was involved in gang activity and may have been mistaken for Mr. Thomas; (4) Mr. Griffin was shot due to his "dangerous lifestyle" as a known drug dealer who was involved in illegal activity and had a reputation for violence and shootings; (5) the shootings were linked to a rash of murders that

occurred in Akron and the Grant Street area around that same time; and (6) Mr. Spaulding was erroneously identified as the shooter because police were investigating another murder that occurred only hours before Mr. Griffin was shot and the suspect in that case ("C.M.") looks similar to Mr. Spaulding, creating the possibility that media exposure tainted the identifications.

{¶79} The trial court found that defense counsel investigated the events surrounding the shootings. Police officers testified that they investigated these issues as well. A robbery theory was rebutted by testimony that nothing was taken, and several witnesses testified that Mr. Thomas and Mr. Griffin sold drugs and that the Grant Street house was a drug house. Several witnesses also testified and were cross-examined regarding the murder of Mr. Clark. Moreover, the court found that the possibility the eyewitness identifications of Mr. Spaulding were tainted by media exposure was pure speculation. The court also found that Mr. Spaulding's evidence dehors the record did not advance his ineffective assistance claim and the issue was barred by the doctrine of res judicata.

{¶80} We conclude that the trial court's findings are supported by competent and credible evidence. Defense counsel did, in fact, suggest the alternate theories that the shootings were related to the murder of Mr. Clark or may have been drug-related. *See Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, at ¶ 48-49. Counsel also attempted to create reasonable doubt by challenging Mr. Griffin's identification of Mr. Spaulding. *See id.* at ¶ 46. Moreover, Mr. Wilbur and Detective Morrison both testified as to other shootings that had occurred in the neighborhood. Lieutenant James Phister testified that robbery was ruled out as a motive for the shootings because Mr. Griffin and Mr. Thomas still had large sums of money on their persons, Ms. Singleton still had her purse, nothing was taken, and a vehicle was left running in the driveway with the keys still in it. Counsel questioned Lieutenant Phister on cross-examination

and he agreed that a robbery can still occur when nothing is actually taken. The jury also saw police interrogations of Mr. Spaulding, where Mr. Spaulding urged police to speak to Cierra and Keyona regarding four masked men being mentioned by Ms. Singleton, which indicated a multiple shooter/masked men theory. *See Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, ¶ 31-33.

**{¶81}** As to the remaining alternate theories that Mr. Spaulding is now introducing, "[n]ew or alternative theories and cumulative evidence to support them have never been recognized as grounds for post[-]conviction relief even if they come from new and/or different experts." *State v. Wilson*, 9th Dist. Lorain No. 97CA006683, 1998 Ohio App. LEXIS 2794, *17 (June 24, 1998). A petitioner may not "seek[] to invalidate his trial because the defense did not prove to be successful, so that he might be retried and attempt an alternate theory of defense. This is not the purpose of post[-]conviction relief proceedings." *State v. Doran*, 9th Dist. Wayne No. 1424, 1976 Ohio App. LEXIS 6041, *10-11 (July 1, 1976). Here, defense counsel presented viable and coherent alternate theories for the shootings at trial and challenged the State's evidence in an attempt to create reasonable doubt; the mere fact that they were unsuccessful and Mr. Spaulding was found guilty does not establish ineffective assistance of counsel. Mr. Spaulding has failed to demonstrate deficient performance or any resulting prejudice. We conclude that the trial court did not err or abuse its discretion in denying these grounds for relief without a hearing.

### Prosecutorial Misconduct

**{¶82}** Several grounds for relief in Mr. Spaulding's petition for post-conviction relief alleged prosecutorial misconduct.

{¶83} "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced." *State v. Moreland*, 9th Dist. Summit No. 27910, 2016-Ohio-7588, ¶ 22, citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "The Supreme Court of Ohio has limited the instances when a judgment may be reversed on grounds of prosecutorial misconduct." *State v. Knight*, 9th Dist. Lorain No. 03CA008239, 2004-Ohio-1227, ¶ 6, citing *State v. Lott*, 51 Ohio St.3d 160, 166 (1990). "'[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial.'" *Moreland* at ¶ 22, quoting *Knight* at ¶ 6. "The defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted him." *Moreland* at ¶ 22. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

### Ground for Relief 3

{¶84} Mr. Spaulding argued prosecutorial misconduct when the prosecutor told the jury during opening statements that cell phone data showed Mr. Spaulding "right in the area of 1104 Grant Street" before Mr. Griffin was shot, "moving away" from the area after the shooting, back in the same area again before Ms. Singleton and Mr. Thomas were shot, and out of the area again after the shootings. Mr. Spaulding argued that this was a gross exaggeration and misstatement of the evidence. During closing arguments, the prosecutor also stated, "His cell phone puts [him] there while they're being shot and moving away shortly after. And we're not talking about two or three streets away or two or three miles away. We're talking about within blocks. [His] cell phone is there." Mr. Spaulding argued that this was a misrepresentation of the facts and

evidence. Mr. Spaulding relied again on Mr. Vassel's affidavit, where he avers that "[a] person's location cannot be pinpointed so precisely by using data from cell phone towers."

{¶85} The trial court found that any alleged errors in the prosecutor's opening or closing statements were corrected by the jury instruction from the court that counsel's arguments are not evidence and that the jury would judge the facts. Moreover, the court found that Mr. Spaulding's evidence dehors the record did not even marginally advance his prosecutorial misconduct claim and the issue was barred by the doctrine of res judicata.

{¶86} We conclude that the trial court's findings are supported by competent and credible evidence. As opening and closing statements are a part of the record, Mr. Spaulding's claims could have been made on direct appeal without resorting to evidence dehors the record and are now barred by the doctrine of res judicata. Nevertheless, the trial court properly instructed the jury that opening and closing statements are not evidence, but merely intended to assist the jury in evaluating the evidence. "It is axiomatic that 'statements made by counsel in opening statements and closing arguments are not evidence[]' and the jury was instructed to disregard them as evidence accordingly." *State v. Carr*, 9th Dist. Summit No. 26661, 2014-Ohio-806, ¶ 16, quoting *State v. Frazier*, 73 Ohio St.3d 323, 338 (1995). "It is presumed that the jury will follow the court's instructions." *State v. Manor*, 9th Dist. Summit No. 14376, 1990 Ohio App. LEXIS 2182, *3 (May 30, 1990). Furthermore, Detective Moledor did not testify that he could pinpoint Mr. Spaulding's location exactly using his cell phone records. He testified that he could only map a "general area" of a cell phone's location when it uses a cell tower. He only concluded that Mr. Spaulding's phone placed multiple calls between 2:04 A.M. and 2:15 A.M., and between 7:58 A.M. and 8:08 A.M., on December 11, 2011, using the cell phone towers in the vicinity of 1104 Grant Street. Therefore, considering the evidence presented at trial, we

cannot conclude that the prosecutor's generalized remarks in her opening and closing statements were improper. Mr. Spaulding has not demonstrated how he was prejudiced by these remarks or how they deprived him of his right to a fair trial. We conclude that the trial court did not err or abuse its discretion in denying this ground for relief without a hearing.

Grounds for Relief 13 and 16

**{¶87}** Mr. Spaulding argued that the State failed to correct: (1) Nurse Trenkelbach's testimony regarding when Mr. Griffin last received morphine prior to being shown the photo arrays, which he claims was contradicted by Mr. Griffin's medical records; and (2) Mr. Wilbur's testimony regarding his drug usage at the time of the shootings, which was contradicted by his criminal history. Mr. Spaulding attached Mr. Griffin's medical records as well as documents from Mr. Wilbur's criminal cases in support of his arguments.

**{¶88}** The trial court found that Mr. Spaulding failed to argue that Nurse Trenkelbach's alleged false testimony affected the judgment of the jury. The court further found that a drug possession charge does not indicate that Mr. Wilbur lied on the stand about the last time he used drugs, and Mr. Spaulding's argument to the contrary is pure speculation. Mr. Spaulding failed to argue that Mr. Wilbur's marijuana charge was material to Mr. Spaulding's case or how the information would have affected the judgment of the jury. The court also found that the evidence dehors the record did not even marginally advance his claims of prosecutorial misconduct and the issues were barred by the doctrine of res judicata.

**{¶89}** "[T]he prosecutor, as an agent of the state, has a constitutional duty to assure the defendant a fair trial. Consistent therewith is the obligation of the prosecutor (1) to refrain from knowingly using perjured testimony, (2) to disclose certain evidence favorable to the accused,

and (3) to correct testimony he knows to be false." *State v. Staten*, 14 Ohio App.3d 78 (2d Dist.1984), paragraph one of the syllabus. *See also Mooney v. Holohan*, 294 U.S. 103 (1935).

{¶90} We conclude that the trial court's findings are supported by competent and credible evidence. Mr. Griffin's medical records were introduced into evidence at trial and, therefore, Mr. Spaulding could have raised this issue in his direct appeal; he is consequently barred by the doctrine of res judicata from raising it now. *See State v. Cureton*, 9th Dist. Medina Nos. 03CA0009-M and 03CA0010-M, 2003-Ohio-6010, ¶ 13. Nonetheless, while Mr. Spaulding argues that Nurse Trenkelbach's testimony is contradicted by Mr. Griffin's medical records, he fails to argue or demonstrate that the prosecutor actually knew the testimony to be false.

{¶91} As to Mr. Wilbur's criminal history, we disagree with the trial court's determination that the issue is barred by res judicata. Evidence dehors the record indicating that Mr. Wilbur was arrested on drug charges near the date that the underlying crimes in Mr. Spaulding's case were committed meets the threshold standard of cogency required to survive preclusion by res judicata. However, Mr. Spaulding argues that Mr. Wilbur's marijuana case "strongly implies" that he possessed marijuana for personal use and that "it is far from 'speculative' to assume a known drug user, caught with and charged with possession of drugs, is using drugs," and this Court is unpersuaded by such a precarious attempt to amalgamate or confuse the definitions of "possession" and "use." As the Supreme Court of Ohio has stated, "'Possession and use are not equivalent.'" *State v. Thomas*, 152 Ohio St.3d 15, 2017-Ohio-8011, ¶ 37, quoting *Kaufman v. People*, 202 P.3d 542, 555 (Colo.2009). "'Possess' or 'possession' means having control over a thing or substance * * *." R.C. 2925.01(K). "In this context, 'use' means '[t]he action of consuming something as food, drink, a drug, etc.'" *Heimer v. Companion*

*Life Ins. Co.*, 879 F.3d 172, 174 (6th Cir.2018), quoting Oxford English Dictionary (3d Ed.2011). Mr. Spaulding has provided no evidence to demonstrate that Mr. Wilbur actually used marijuana or was actually intoxicated in any way on the day of the shootings or any other day relevant to his testimony. Thus, regardless of our disagreement with the trial court's reliance on res judicata here, we agree with the trial court that Mr. Spaulding has failed to demonstrate how Mr. Wilbur's testimony was false or contradictory, or that the prosecutor knew it to be false. *See Wesson*, 2012-Ohio-4495, at ¶ 31, quoting *Rude*, 2011-Ohio-6789, at ¶ 21, quoting *Billings*, 2006-Ohio-764, at ¶ 19 ("[T]his Court will not reverse a correct judgment merely because of a flaw in the trial court's analysis[,]" but shall "'affirm a trial court's judgment that is legally correct on other grounds * * *.'").

**{¶92}** We cannot say that the prosecutor's conduct was improper or that Mr. Spaulding was deprived of his right to a fair trial. We therefore conclude that the trial court did not err or abuse its discretion in denying these grounds for relief without a hearing.

Ground for Relief 19

**{¶93}** Mr. Spaulding argued that the State failed to disclose favorable, exculpatory evidence, specifically Mr. Griffin's text messages, which showed he could have been shot as a result of his "dangerous lifestyle." He claimed that "[i]t does not appear that the State turned these text messages over to trial counsel" as they were in the prosecutor's files but not defense counsel's files. He claimed the text messages showed that Mr. Griffin had an "extensive text message conversation" with someone a month before he was shot, in which the other person "appeared to be pleading for his life" while Mr. Griffin "was apparently threatening to kill" the person.

**{¶94}** If the State withholds material, exculpatory evidence, it offends a criminal defendant's due process rights. *State v. Charlton*, 9th Dist. Lorain No. 12CA010206, 2014-Ohio-1330, ¶ 32, citing *Brady v. Maryland*, 373 U.S. 83 (1963). "'However, it is []the defendant's burden to establish that the evidence is both favorable and material and that there is a reasonable probability that the outcome would have been different if the evidence had been provided.'" *Charlton* at ¶ 32, quoting *State v. Moultry*, 9th Dist. Summit No. 25065, 2010-Ohio-3010, ¶ 9.

**{¶95}** Mr. Spaulding attached a copy of Mr. Griffin's text messages, and specifically directed the court to communications between Mr. Griffin and one unknown individual in particular. The individual apologizes for apparently getting caught using Mr. Griffin's name at the Oriana House after receiving a "ticket," and Mr. Griffin is seemingly upset. Mr. Spaulding focuses specifically on three lines of text from Mr. Griffin, where he states, "I swear on my dead granny n***a I'm gasing you true story[,]" "N***a f**k u b over y'all house Imma show… dnt beg now ur done on my kids[,]" and "U leaving me no choice bt to have u gunnz." The first text exchange between the two individuals begins on November 4, 2011, and is as follows:

> INCOMING: Bro I f****d up i tried to take care of it witout tellin but that wouldn't of been real what i did wasn't real dnt kno how u go react but yo name a b cleared tmrw
>
> OUTGOING: What u mean
>
> INCOMING: Im in the Oriana
>
> INCOMING: Im textn u now i f****d up
>
> OUTGOING: Man u ain't n damn ori let me find out u use my name and I swear on my dead granny n***a I'm gasing u true story so. U better say it now cuz when I get home um looking on da computer
>
> INCOMING: You already talkin bout gasin me before I explained nothing is goin to happen to you

INCOMING: I got a ticket and i misrepresented you n u gotta go c ms diana at 7th floor 11 4 yo signature i went and admitted n they will switch the names that's all you have nothing to worry about everything good i told em i misreped yo name she already know so c her n give a signature n i will have to face the dark tint n a piece of k was on my shirt nothn serious i didn't mean to do this bro i went straight down there and told them i should have been told u but i didn't know wat to do it aint no police bro so please don't take this the wrong way man i know it was wrong please don't take me out or get me took out i aint the police I went straight down there n told em i misrepped you i aint never do nothn to where you cant trust me i f****d up please 4 give me bro n don't do nothn keep it between us its like this never happened jus sign yo signature to show it wasn't you and walkout but b there at 1030 11 to 7th floor ms diana

OUTGOING: N***a fuck u b over y'all house imma show… dnt beg now ur done on my kids

INCOMING: Ma bad bro its not that serious bro i went and told them i did it bro it aint gotta go like that u not n no type of trouble we pose to be n****s

INCOMING: Its like it never happened jus go tomorrow at 1030 11 to 7th ms diana n she a take care of it and you a c how i cleared it they said u would still have to show to get it dismissed but all i ask i come to you if u really feel that way dnt tramatize my bm n my daughter n we can handle it the rite way but it was wrong but deep dwn it aint serious i took the blame 4 ma mistake and nothn go happen to you

OUTGOING: Answer the phone

OUTGOING: How u gon admit yo what u did of I ain't answering

INCOMING: Could i still call to holla at u needed to yank on u when u ready asap

OUTGOING: Ok

{¶96} A second conversation between the two individuals occurs on November 7, 2011, and is as follows:

OUTGOING: Blow down on me real quick

INCOMING: Ok where at

OUTGOING: I'm pulling up to yo house lets catch this round real quick

INCOMING: Ok bro we can catch a round but 4 wat we can solve it a diff way plus not rite now im baby sitten I got ma daughter bro jus call n we can rap

INCOMING: I do watever yo I jus want to get it over wit so I can b wit my daughter

OUTGOING: Ain't no other way to solve besides me punching the s\*\*t outta u bro so come out or I'm coming n

OUTGOING: U leaving me no choice bt to have u gunnz

INCOMING: Wat u mean by that

OUTGOING: U knw what that mean…

**{¶97}** The trial court found that this argument was barred by the doctrine of res judicata. The court also agreed with the State that Mr. Spaulding did not present evidence dehors the record that counsel did not have access to Mr. Griffin's text messages, nor did he demonstrate that he was prejudiced by the absence of the text messages at trial.

**{¶98}** We conclude that some of the trial court's findings are supported by competent and credible evidence.  Mr. Spaulding concedes that this evidence was in the prosecutor's files, which contradicts his speculative claim that the evidence was not provided to, or was somehow withheld from, defense counsel by the prosecutor.  Summit County maintains an "open-file discovery" policy whereby "[d]efense counsel must * * * review the [p]rosecutor's file for pertinent evidence and factual determinations as to the truth of the charge * * *."  S.C.C. Rule 21.06.  Mr. Spaulding has failed to provide any evidence dehors the record to show how these text messages, which were in existence and available for defense counsel to review at or before trial, were withheld by the State or somehow not provided to defense counsel.  Mr. Spaulding has also failed to demonstrate how he has been prejudiced and failed to establish a reasonable probability that the outcome of his trial would have been different.  While Mr. Spaulding focuses exclusively on the conversations between Mr. Griffin and this unknown individual on November 4th and November 7th to support his argument that Mr. Griffin led a "dangerous lifestyle" and "threaten[ed] to kill" someone who was "pleading for his life," he ignores the overwhelming

majority of text messages between these two individuals afterward, indicating that the two appear to be friends. The two text each other often on November 10th, 13th, 15th, 17th, 19th, 20th, 25th, 27th, 28th, 30th, December 1st, 2nd, 4th, 6th, 8th, 9th, 11th, 12th, and 13th. The unknown individual twice asks Mr. Griffin to borrow clothes. At one point Mr. Griffin texts, "Bro I need a favor." The individual asks Mr. Griffin, "How everything goin or went bro" and later asks him for help with something. They also appear to discuss smoking marijuana together a couple of times.

{¶99} While we once again disagree with the trial court's determination that res judicata applies here, Mr. Spaulding has failed to show any improper conduct by the prosecutor or any resulting prejudice. We therefore conclude that the trial court did not err or abuse its discretion in denying this ground for relief without a hearing. *See Wesson*, 2012-Ohio-4495, at ¶ 31, quoting *Rude*, 2011-Ohio-6789, at ¶ 21, quoting *Billings*, 2006-Ohio-764, at ¶ 19 ("[T]his Court will not reverse a correct judgment merely because of a flaw in the trial court's analysis[,]" but shall "'affirm a trial court's judgment that is legally correct on other grounds * * *.'").

## Ground for Relief 26

{¶100} Mr. Spaulding argued prosecutorial misconduct because the State presented false and misleading evidence that was "beyond the bounds of science[,]" specifically the testimony of the BCI forensic scientist, Mr. Roberts, that it was his opinion that the four cartridges recovered from the two crime scenes were fired by the same gun. Mr. Spaulding referred again to the report from Mr. Nixon, citing the NAS Report regarding toolmark uniqueness, and argued that "expert testimony that purports to determine definitively that a particular gun must have fired a particular bullet is not currently supported by science."

{¶101} The trial court found that the argument was barred by the doctrine of res judicata. Moreover, the court found that Mr. Spaulding's evidence dehors the record did not advance his argument that the prosecutor presented false ballistics evidence through a BCI analyst.

{¶102} Although we disagree with the trial court's determination that this claim is barred by res judicata, we conclude that some of the trial court's findings are supported by competent and credible evidence. Mr. Roberts testified at trial that in his opinion, based on a reasonable degree of scientific certainty, the four cartridges "were fired from one firearm" and his findings were documented in his report. The prosecutor asked, "[I]s that your opinion 100 percent without question?" and Mr. Roberts said, "Correct." The NAS Report does not fully support Mr. Spaulding's claims that Mr. Roberts' testimony was "beyond the bounds of science" or "not currently supported by science." In fact, "[t]he NAS Report was not a wholesale repudiation of forensic ballistic evidence or so-called 'toolmark identification' * * *." *Rice v. Gavin*, E.D.Pa. No. 15-291, 2016 U.S. Dist. LEXIS 21258, *26 (Feb. 18, 2016). In the NAS Report's summary assessment, the committee criticizes the "limitations" of toolmark and firearms analysis, but nonetheless concedes: "Individual patterns from manufacture or from wear might, in some cases, be distinctive enough to suggest one particular source, but additional studies should be performed to make the process of individualization more precise and repeatable." Thus, we conclude that the NAS Report does not establish that the prosecutor presented "false and misleading" ballistics testimony through Mr. Roberts' testimony. Accordingly, we cannot say that the prosecutor's conduct was improper or that Mr. Spaulding was deprived of his right to a fair trial. We conclude that the trial court did not err or abuse its discretion in denying this ground for relief without a hearing. *See Wesson*, 2012-Ohio-4495, at ¶ 31, quoting *Rude*, 2011-Ohio-6789, at ¶ 21, quoting *Billings*, 2006-Ohio-764, at ¶ 19 ("[T]his Court will not reverse a

correct judgment merely because of a flaw in the trial court's analysis[,]" but shall "'affirm a trial court's judgment that is legally correct on other grounds * * *.'").

Grounds for Relief 27 and 28

{¶103} Mr. Spaulding argued prosecutorial misconduct because the State elicited testimony from a BCI forensic scientist, Stacy Violi, that three swabs taken from Mr. Spaulding's shoes were presumptively positive for blood and a partial DNA profile consistent with Mr. Spaulding was obtained from one of the swabs. The State then misrepresented this evidence in closing arguments to suggest that the blood of one of the victims was found on Mr. Spaulding's shoes. He further argued that the State elicited testimony from Lieutenant Phister which it "knew or should have known to be misleading or categorically false[,]" specifically that Lieutenant Phister conducted a "victimology" to attempt to determine what could make Mr. Griffin the target of a crime, but he was unable to determine any suspects who would want to shoot Mr. Griffin.

{¶104} Mr. Spaulding attached no evidence dehors the record to support his argument regarding the blood on his shoes, but instead stated that "the dehors the record evidence that will prove the State's misconduct is the results from the DNA testing of the remaining blood spots." He attached various exhibits to demonstrate Mr. Griffin's "dangerous lifestyle" involving drugs, gangs, and violence, including: Mr. Griffin's text messages; Mr. Fields' affidavit; numerous police reports regarding Mr. Clark's murder; an affidavit from an FBI agent investigating Mr. Griffin for extortion; an online newspaper article regarding the shooting of Mr. Griffin and the murders of Ms. Singleton and Mr. Thomas; indictments for Mr. Thomas and Mr. Griffin that include criminal gang activity for Mr. Thomas and drug-related charges for both men; an online

docket for a case involving gang-related charges for Mr. Thomas; and police reports from separate incidents where Mr. Griffin and other individuals were shot, robbed, or arrested.

{¶105} The trial court found that the DNA evidence presented at trial proved to be irrelevant to the State's case and that it only demonstrated the extent of the police investigation conducted. The court further found that these arguments were barred by the doctrine of res judicata and that "[t]here is no authority for the proposition that the prosecutor commits misconduct by 'eliciting testimony' from its witnesses."

{¶106} We conclude that the trial court's findings are supported by competent and credible evidence. Ms. Violi testified that she conducted DNA analysis on three swabs that were presumptively positive for blood and were found on Mr. Spaulding's shoes. One swab contained a profile consistent with Mr. Spaulding, but no DNA profiles were obtained from the other swabs. In her closing arguments, the prosecutor stated:

> [W]e do have blood on his shoes. Now, you all saw that booking video. It was deliberate, pick up one foot, check it out, pick up the other foot, and check it out. Now, shoes cost more than clothes. I think we all know that. So perhaps he thought, Oh, I'll just give my shoes a good scrub and get rid of all the blood; but the clothes, you know, maybe you can't get it out. We know he's been sitting in the jail watching CSI so I can assume he's watching it at home, but he missed some spots, because there is blood on his shoes.

Nowhere in this statement does the prosecutor "misrepresent[] the evidence [and argue that] the blood belonged to one of the victims[,]" as Mr. Spaulding has argued. Ms. Violi's DNA report was entered into evidence at trial and Mr. Spaulding failed to submit any evidence dehors the record in support of his argument. As the report, Ms. Violi's testimony, and closing arguments were all in the record, Mr. Spaulding's argument could have been raised on direct appeal and is now barred by the doctrine of res judicata.

{¶107} Lieutenant Phister testified that the police conducted a "victimology" of Mr. Griffin whereby:

> We look at the victim of the crime and when it's an unknown suspect, and we try and determine what has the victim done, what's his -- who are his associates, what are his previous crimes, who are his friends, and trying to figure out what would make him a victim of that crime or what would make him the target of that crime.

He further testified that the police were not able to determine any suspects who would have wanted to shoot Mr. Griffin. Mr. Griffin's criminal history was all drug-related. He was never charged with any robberies or shootings and he was never a suspect in the murder of Mr. Clark. No weapons had been found on Mr. Griffin or in his vehicle after he was shot. Mr. Spaulding has not demonstrated that Lieutenant Phister's testimony was false or that the prosecutor knew the testimony to be false or misleading. Moreover, this argument could have been raised on direct appeal and is now barred by the doctrine of res judicata.

{¶108} We cannot conclude that the prosecutor's questioning of these witnesses was improper. We also cannot conclude that the prosecutor's comments during closing arguments were improper. Mr. Spaulding has failed to demonstrate how he was deprived of his right to a fair trial. We therefore conclude that the trial court did not err or abuse its discretion in denying these grounds for relief without a hearing.

## **Cumulative Error**

### Grounds for Relief 10, 34, and 35

{¶109} Mr. Spaulding argued that even if none of his grounds for relief are well-taken, the cumulative effect of the errors and omissions warranted relief. He also argued that his "counsel entirely failed to mount a defense" and presented a lengthy summary of all of the arguments previously raised in his petition.

{¶110} The trial court found that none of Mr. Spaulding's claims had any merit and he, therefore, cannot establish a constitutional violation by joining the claims together.

{¶111} We conclude that the trial court's findings are supported by competent and credible evidence. The Supreme Court of Ohio has recognized the cumulative error doctrine. *See State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. According to this doctrine:

> [E]rrors during trial, "singularly, may not rise to the level of prejudicial error, [but] a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." "[E]ven to consider whether 'cumulative' error is present, [the court] would first have to find that multiple errors were committed in this case."

(Citations omitted.) *Wesson*, 2012-Ohio-4495, at ¶ 113. The trial court found no errors in Mr. Spaulding's grounds for relief and, therefore, rejected his cumulative error grounds for relief. Mr. Spaulding mistakenly claims that the trial court failed to specifically rule on his 35th ground for relief. But, a footnote to the subheading entitled "CUMULATIVE ERROR * * *" in the trial court's order clearly states that the section addresses "Grounds for Relief 10, 34, and 35." Moreover, in the trial court's "CONCLUSION" section, it explicitly states: "Spaulding's cumulative errors claims (Grounds for Relief 10, 34, and 35) fail as a matter of law for failure to demonstrate a single meritorious error during the trial or mitigation phase." This Court, having reviewed all of Mr. Spaulding's grounds for relief, concludes that the trial court did not err in rejecting Mr. Spaulding's cumulative error grounds for relief without a hearing.

### Conclusion

{¶112} After a thorough review of the record in this case, we conclude that Mr. Spaulding did not present sufficient operative facts and evidence dehors the record in support of his grounds for relief in his petition for post-conviction relief, and thus the trial court did not err or

abuse its discretion in denying his 35 grounds for relief and in determining that an evidentiary hearing was not warranted. Some of Mr. Spaulding's arguments are barred by the doctrine of res judicata as they could have or should have been raised in his direct appeal, while others actually were raised in his direct appeal. The evidence dehors the record that he submitted, while voluminous in size, did not add much, if anything, to the substance of his claims. Mr. Spaulding sometimes strategically focused only on certain parts of evidence out of context, while ignoring other parts that did not support his arguments and sometimes even contradicted them. Mr. Spaulding has failed to demonstrate ineffective assistance of counsel, prosecutorial misconduct, or cumulative error.

{¶113} Accordingly, Mr. Spaulding's third assignment of error is overruled.

## ASSIGNMENT OF ERROR FOUR

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED SPAULDING RELIEF WITHOUT AFFORDING HIM THE NECESSARY DUE PROCESS TO MEET HIS BURDEN.

{¶114} In his fourth assignment of error, Mr. Spaulding argues that he was denied "the necessary due process to which he should be entitled" during the post-conviction process because he had no right to a hearing, no ability to obtain discovery, and his arguments were constrained by the three-page per claim limit under the Ohio Rules of Criminal Procedure. Because Mr. Spaulding did not raise this argument below, we decline to address it and therefore overrule it.

{¶115} We review a constitutional challenge de novo. *State v. Franks*, 9th Dist. Summit No. 28533, 2017-Ohio-7045, ¶ 21. We note once again that a petitioner seeking post-conviction relief is not automatically entitled to a hearing. *Phillips*, 2002 Ohio App. LEXIS 788, at *6, citing *Calhoun*, 86 Ohio St.3d at 282. Moreover, "there is no right to discovery in a post-

conviction proceeding." *Coleman*, 2015-Ohio-752, at ¶ 5. This Court has also stated that the three-page limit provided by Crim.R. 35 is reasonable and affords petitioners ample opportunity to concisely present each ground for relief. *State v. White*, 9th Dist. Summit No. 19040, 1999 Ohio App. LEXIS 2721, *10 (June 16, 1999). "'[E]ven in capital cases, we have upheld page limitations, finding that they force counsel to winnow out weaker arguments and focus on key issues.'" *Id.*, quoting *Ziegler v. Wendel Poultry Serv., Inc.*, 67 Ohio St.3d 10, 22 (1993), *overruled in part on other grounds Fidelholtz v. Peller*, 81 Ohio St.3d 197 (1998). Additionally, Crim.R. 35 does not restrict the number of grounds for relief that may be presented and further permits the trial court to extend the page limit. *White* at *10. Mr. Spaulding even admits to having availed himself of the lack of any limit to the number of grounds he may present, as he chose to parse out his global claims of ineffective assistance of counsel, prosecutorial misconduct, and cumulative error into 35 separate grounds for relief in his petition. He states that "because of the page limitation imposed by Crim.R. 35, [he] has had to subdivide his ineffectiveness claims into smaller claims."

{¶116} This Court is cognizant of the recent changes to the post-conviction relief statute, effective April 6, 2017, including the addition of R.C. 2953.21(A)(6), which states in part: "Notwithstanding any law or court rule to the contrary, there is no limit on the number of pages in, or on the length of, a petition filed * * * by a person who has been sentenced to death * * *." However, as Mr. Spaulding concedes in his merit brief, these changes do not apply to him as his petition was filed prior to April 6, 2017.

{¶117} Nevertheless, although Mr. Spaulding raised 35 grounds for relief in his petition, none of them challenged the constitutionality of R.C. 2953.21 et seq. or Crim.R. 35 and claimed that his due process rights were violated because he had no right to a hearing, no ability to obtain

discovery, or was constrained by page limits; he has consequently forfeited these arguments for purposes of appeal. "'The failure to challenge the constitutionality of a statute in the trial court forfeits all but plain error on appeal, and the burden of demonstrating plain error is on the party asserting it.'" *State v. Smith*, 9th Dist. Wayne No. 15AP0001, 2017-Ohio-359, ¶ 28, quoting *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 2. As Mr. Spaulding failed to raise these issues at the trial court level, he has forfeited all but plain error. *See id.* He has not raised plain error on appeal and we decline to create a plain error argument on his behalf. *See State v. Boatright*, 9th Dist. Summit No. 28101, 2017-Ohio-5794, ¶ 8.

{¶118} Mr. Spaulding's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED BY DENYING SPAULDING'S POST-CONVICTION PETITION WITHOUT FIRST ALLOWING SPAULDING TO CONDUCT DNA TESTING AND RELATED DISCOVERY.

{¶119} In his second assignment of error, Mr. Spaulding argues that the trial court erred when it denied his motion for DNA testing for failure to comply with R.C. 2953.72(A) because R.C. 2953.84 provides other means apart from R.C. 2953.71 et seq. to obtain post-conviction DNA testing. As this Court is without jurisdiction to review a denial of an application for DNA testing when the offender has been sentenced to death, pursuant to R.C. 2953.73(E)(1), we decline to reach the merits of Mr. Spaulding's argument and therefore overrule this assignment of error.

{¶120} This Court does not have the authority to review the trial court's denial of Mr. Spaulding's motion for DNA testing in this case. Pursuant to R.C. 2953.73(E)(1), if an eligible offender is sentenced to death and submits an application for DNA testing that is rejected by the trial court, the trial court's judgment may only be appealed to the Supreme Court of Ohio. *See*

*State v. Noling*, 136 Ohio St.3d 163, 2013-Ohio-1764, paragraph one of the syllabus ("R.C. 2953.73(E)(1) * * * grants exclusive jurisdiction to the Supreme Court of Ohio to review rejections of applications for DNA testing in cases in which the death penalty is imposed * * *.") *See also State v. Noling*, 149 Ohio St.3d 327, 2016-Ohio-8252, ¶ 64 (severing unconstitutional statutory provisions from R.C. 2953.73(E)(1) and R.C. 2953.72(A)(8) that previously required capital offenders to *seek leave* to appeal to the Supreme Court of Ohio, thus providing an appeal of right solely to the Supreme Court of Ohio for capital offenders who are denied post-conviction DNA testing). "Courts of appeals do not have jurisdiction to review any rejection *if the offender was sentenced to death* for the offense for which the offender claims to be an eligible offender and is requesting DNA testing." (Emphasis added.) R.C. 2953.73(E)(1). Mr. Spaulding was sentenced to death for the offenses for which he requests DNA testing. The trial court found that he did not submit his application for DNA testing on the appropriate form in accordance with R.C. 2953.72(A). Consequently, we must conclude that this Court is without jurisdiction to review the trial court's denial of his motion for DNA testing[1].

{¶121} Mr. Spaulding also argues that the trial court erred when it denied his motion for related discovery. As Mr. Spaulding has failed to comply with App.R. 16(A)(7), we decline to reach the merits of this particular argument and therefore overrule it.

---

[1] Pending legislation would amend R.C. 2953.73(E) to provide district courts of appeals with jurisdiction over appeals of *all* rejections of applications for DNA testing from courts of common pleas, whether or not the offender was sentenced to death. *See* 2017 Bill Text OH H.B. 389. However, this change would not affect Mr. Spaulding because "[a]n offender who was sentenced to death before the effective date of this act shall have the same rights to appeal and to post[-]conviction remedies as the offender had under the provisions of Chapter 2953. of the Revised Code as those provisions existed immediately before the effective date of this act or as those provisions may hereafter be amended, and courts shall have the same powers and duties with respect to those offenders under those provisions as courts had before the effective date of this act." *Id.*

{¶122} Mr. Spaulding's motion for related discovery included allegations that "trial counsel put no effort into having the State's physical evidence inspected or scientifically tested" and therefore requested permission to conduct testing of bullet casings, cigar butts, a ten dollar bill, a baggie containing marijuana, a water bottle, and a cigar holder. As this motion was combined with Mr. Spaulding's motion for DNA testing, the trial court's order summarily denied it by stating "Petitioner's Motion for Testing *and Related Discovery* is OVERRULED." (Emphasis added.).

{¶123} "[T]his Court has repeatedly held that there is no right to discovery in a post-conviction proceeding." *State v. Coleman*, 9th Dist. Summit No. 27506, 2015-Ohio-752, ¶ 5. Nevertheless, Mr. Spaulding has failed to identify or argue in his merit brief exactly how the trial court erred in denying his motion for related discovery. He broadly claims that "[t]he court erred in denying the discovery motion" and that he "was denied due process in his post-conviction appeal[,]" but fails to advance any argument to support these claims in accordance with App.R. 16(A)(7). Accordingly, we may disregard this part of Mr. Spaulding's assignment of error for failure to argue his claim, as required under App.R. 16(A). *See* App.R. 12(A)(2). *See also Cardone*, 1998 Ohio App. LEXIS 2028 at *22 ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out").

{¶124} Mr. Spaulding's second assignment of error is overruled.

III.

{¶125} Mr. Spaulding's first, second, third, and fourth assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

RACHEL TROUTMAN, Supervising Attorney, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DiMARTINO, Assistant Prosecuting Attorney, for Appellee.